## LEHIGH VALLEY COOPERATIVE FARMERS v. BOWLES, Price Administrator.

### No. 192.

United States Emergency Court of Appeals.

Heard at Philadelphia March 21, 1945.

Filed April 13, 1945.

---

4 O. P. A. Service—3 Food, 47,341.

Harold A. Butz, of Allentown, Pa. (Harvey H. Steckel, of Allentown, Pa., on the brief), for complainant.

John O. Honnold, Jr., Sp. Asst. to Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Betty L. Brown, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

MARIS, Chief Judge.

The complainant is a Pennsylvania agricultural cooperative association organized in 1933. Of its 650 stockholders 408 are local farmers who ship milk to the complainant. When the milk arrives at the complainant's Allentown plant it is commingled, processed and distributed. Each month the complainant prepares a work sheet showing the total receipts from the sales of the milk. Operating costs, reserves and estimated dividends are deducted. The balance of the receipts is distributed to the patrons in the proportion that each has delivered milk during the month. The work sheet contains no break down as to how much of the payment represents the price of the milk and how much represents the savings effected by the cooperative method of doing business. Although its by-laws provide for distribution of its net income at the end of its fiscal year the complainant has since its inception made full distribution to its patrons each and every month. The monthly payments exceed the applicable maximum prices for milk.[1]

On February 14, 1944 the Price Administrator issued Supplementary Order No. 84, Payment of Patronage Dividends By Marketing Cooperative Associations.[2] Section 1305.215 of that Order provides that marketing cooperatives may pay patronage dividends even though the dividend plus the original payment results in the patron receiving more for the commodity than the applicable ceiling price provided the cooperative meets the conditions laid down by subsection (c). Six of the seven paragraphs of subsection (c) detail various conditions which the cooperative must meet. However, even though the cooperative complies with all these conditions paragraph (5) of the subsection nevertheless prohibits the payment of patronage dividends except at the end of the cooperative's fiscal year or at the end of intervals of not less than six months when the books are regularly closed at the end of such intervals. The complainant protested this provision of Supp. Order 84 but its protest was denied. It thereupon filed the present complaint in this court.

■ The complainant first contends that the Order, insofar as it prohibits the monthly distribution of patronage dividends and restricts such payments to annual or semi-

---

[1] Maximum prices for purchases of milk from producers for resale as fluid milk are established under Maximum Price Regulation 329 (8 F.R. 2038). In 1943 the maximum price for milk of 4% but-

terfat content was $3.72 per cwt. f. o. b. complainant's plant. In that year the complainant made monthly payments to its patrons of as much as $4.49 per cwt.

[2] 9 F.R. 1721.

annual periods violates the Emergency Price Control Act because it is disruptive of one of the complainant's business practices. Its argument in support of this contention is based primarily upon Section 2(h) of the Act,[3] which reads:

"The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods or means or aids to distribution, established in any industry, or changes in established rental practices, except where such action is affirmatively found by the Administrator to be necessary to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act."

As we have stated, it has been the practice of the complainant to make monthly payments of patronage dividends. It is, therefore, quite true that the Order requires a change in one of the complainant's business practices. However, the prohibition of Section 2(h) does not relate to individual business practices but only to those practices which are established in the industry as a whole. Safeway Stores, Inc. v. Bowles, Em.App.1944, 145 F.2d 836. It is, therefore, not enough for the complainant to show that one of its business practices has been interfered with by the Order. It must also show that the practice which it alleges to have been unlawfully interfered with is industry-wide in extent.

In the effort to meet this burden the complainant asserts that, whatever may be the case as to marketing cooperatives generally, milk marketing cooperatives have customarily made monthly payments of patronage dividends. It urges, therefore, that insofar as the Order prohibits such monthly payments it compels a change in the industry's business practices in violation of Section 2(h) of the Act. The evidence which the complainant submitted to the Administrator, however, was confined entirely to the fact that its own business practice was to make monthly payments. Moreover the complainant's president in an affidavit filed in support of the protest made the following admission:

"While it may be the custom and procedure among many cooperatives to pay to the farmers who deliver milk a fixed sum upon delivery of milk and to distribute the proceeds derived from the sale of milk on a semiannual or annual basis, this has never been the procedure employed by this cooperative."

In his opinion the Administrator found that the fact thus admitted "is supported and established by a report of the United States Department of Agriculture to the effect that only a relatively small number of milk cooperative marketing associations calculate an actual pool price based on sales returns and expenses, and pay producers this price minus any specified amounts agreed upon in advance for reserves or capital retains. By and large, the greater number of milk cooperative associations either pay their producers a competitive price (equal to that paid by other agencies in the market) and then adjust their profits or losses at the end of an accounting period, or else establish an arbitrary price based on a study of their operations and market conditions, and accumulate whatever profits may result as a surplus or reserve on their balance sheets. These surpluses or reserves must, of course, be disposed of in accordance with the laws under which the associations operate."

The burden was upon the complainant to refute the facts thus found, which otherwise must be taken as true. Montgomery Ward & Co. v. Bowles, Em. App., 1943, 138 F.2d 669. The complainant however, as we have said, produced no evidence to show that the practice of paying patronage dividends each month was general with milk marketing cooperatives, but rather admitted the contrary to be true. It, therefore, wholly failed to establish the necessary basis for a holding that the Order in question has compelled a change in a business practice of the complainant's industry in contravention of Section 2(h) of the Act.

The complainant's next contention is that the provision of the Order under attack does not serve to effectuate the purposes of the Act. We cannot agree. Section 1(a) of the Act states that one of its purposes is "to eliminate and prevent * * * disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency."[4] The natural and indeed inevitable effect of permitting marketing cooperatives which purchase the products of members to pay them patronage dividends which, when combined with the price paid for their products, exceed

---

3 50 U.S.C.A. Appendix § 902(h).

4 50 U.S.C.A. Appendix § 901(a).

the maximum price which competing non-cooperative marketing concerns may pay, is to make possible a virtual monopoly by the cooperatives.

It is true that the Order here under attack is not entirely effectual as a device for eliminating such a disruptive practice in the economy. However, if a producer may receive in his regular monthly settlement no more from a cooperative than he would receive from a competing private marketing concern and any additional payments by way of patronage dividends are neither fixed nor guaranteed but must await the closing of the books at the end of the fiscal period and the determination of net savings for the period, the producer may well be influenced by factors other than price to sell his product to the private concern, instead of the cooperative.

Cash currently paid for produce sold is much more significant to the producer than a share of profits which cannot reach his hands for a substantial period of time and in the meantime is dependent upon the risks of the purchaser's business. The provision of the Order here in question compels the cooperatives in their dealings with producers to observe this distinction between purchase price and patronage dividend. By so doing it undoubtedly retards even though it may not wholly eliminate the disruptive practices which it is designed to combat. It, therefore, effectuates one of the purposes of the Act.

The remaining contentions of the complainant are so lacking in merit as to require no discussion. We conclude that Sec. 1305.215(c) (5) of Supp. Order 84 is valid.

A judgment will be entered dismissing the complaint.