**SUNBEAM CORP. v. CIVIL SERVICE EMPLOYEES' COOPERATIVE ASS'N.**

No. 10344.

United States Court of Appeals
Third Circuit.

Argued Jan. 18, 1951.

Filed March 20, 1951.

Rehearing Denied April 12, 1951.

Delbert T. Kirk, Philadelphia, Pa., for appellant.

C. Russell Phillips, Philadelphia, Pa., Herman T. Van Mell, Chicago, Ill. (Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This case brings before us for the second time this term [1] the application of the provisions of the Pennsylvania Fair Trade Act.[2] The litigation is here on diversity grounds and we are called upon to apply Pennsylvania law. No federal question is involved.

There are two questions. The first is whether the Act applies to transactions of the type which will be described in a moment between a cooperative association and its customers. The second question concerns what remedy the plaintiff may have if the Act applies. The learned District Court held that the Act applied to the transactions here involved. He also ordered an accounting of profits to the plaintiff derived from goods disposed of by the defendant under plaintiff's trademark below prices established by plaintiff pursuant to the Fair Trade Act.

The defendant cooperative association maintains a place of business in Philadelphia which it calls "Exhibitor's House." There it displays miscellaneous wares for sale, among which, at least prior to this litigation, were several of the plaintiff's products. Purchasers obtained these products at less than the price established by fair trade agreements. The defendant never signed a fair trade contract with the plaintiff, but it knew of the establishment of the price to be maintained and there is

1. The first was Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903.

2. Act of June 5, 1935, P.L. 266, §§ 1–5 as amended, 73 Purdon's Pa.Stats.Ann. §§ 7–10.

no dispute that the statute applies to it if it is concluded that defendant's manner of doing business is subject to the fair trade law.[3]

When a customer secures an article from Exhibitor's House, either one of those on display or one ordered for him, he gets it at less than the prevailing retail price and, in the case of the plaintiff's goods, less than the established fair trade price. The customer gets the benefit of this price reduction at the time he gets the goods. The amount of reduction is dependent upon the usual mark-up between cost to a retailer and selling price to the consumer. The larger this margin the greater the discount for the customer. This particular cooperative thus gives its customers the benefit of lower prices at the time the customer secures the goods rather than by a distribution of earnings periodically.

There is another combination of facts which we should mention, though we do not think it is significant in the case. That combination has to do with the minimal membership qualifications and the extent to which defendant restricts itself to dealing with members. The association itself is incorporated as a "non-profit cooperative association" under the laws of the District of Columbia.[4] It has active members who pay $1.00 a year dues. To be an active member one must be a present or former employee of the federal, state or local government or of any branch of the military service or national guard. Affiliate members are members of any association organized on a cooperative basis which has become affiliated with defendant. Active members may vote; affiliate members may not. There is evidence in the record, too, that the sales force at Exhibitor's House is not fussy in requiring a customer to show whether he is either an active or affiliate member, or neither.[5]

We do not think that the organization of this particular cooperative is the significant point in the case. If the statute is applicable to dealings by a cooperative with its customer we think it is equally applicable to a tightly formed cooperative society which requires the showing of a membership card each time a transaction is carried on. In our view, the case for the application of the statute to the defendant society is no better and no worse because it is easy to do business with whether a customer is a member or not. It is a cooperative society run for the benefit of those who do business with it and not for the purpose of making profit for the organizers.[6]

Now we proceed to the principal question. Does the statute apply? Section 8 of the Pennsylvania statute provides:

"§ 8. Unfair competition, defined

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity."

It will be noted there is no exception for cooperatives in the quoted section. Nor is there anywhere else in the statute. There are provisions for excepting certain sales such as closeout sales, fire sales and execution sales[7] and there is a specific exemption for the sale of books to libraries.[8]

How can one find an exception, then, for a cooperative? The suggestion is made that since some of the goods are on consignment the transaction is not a sale by

---

3. 73 Purdon's Pa.Stats.Ann. § 8.

4. 54 Stat. 480, June 19, 1940, 29 D.C. Code, 1940, §§ 801–847.

5. Defendant's articles of incorporation and by-laws contain no restriction on dealing with non-members, and the Act under which it was incorporated does not forbid it.

6. See Packel, The Law of Cooperatives

1–36 (2d ed. 1947). There is no contention that the association is being operated other than in accordance with the District of Columbia Cooperative Association Act, supra Note 4. Its officers and directors receive no compensation as such.

7. 73 Purdon's Pa.Stats.Ann. § 7.

8. 73 Purdon's Pa.Stats.Ann. §§ 9 and 10.

the cooperative to its customer. That suggestion is trifling and we dismiss it as such. We cannot see how it can possibly be said that the way in which this cooperative does business is anything but a sale by the society to its customer and since the type of transaction is not exempted from the operation of the statute we think it clearly falls within it. The suggestion that the cooperative is merely a purchasing agent, not a seller, seems to us to take us far from realities. Nor do we think piercing the corporate veil so as to disclose a purchase by the member for himself gets us closer to the substance of the thing.

But this is a question of Pennsylvania law and we must, of course, look to Pennsylvania authorities. There is no case in point by either of the Pennsylvania appellate courts.[9] There is, however, a decision of a Common Pleas Court of Philadelphia County.[10] It is Welch Grape Juice Co. v. Frankford Grocery Co., 1939, 36 Pa.Dist. & Co. 653. In that case defendant was a cooperative association of retail grocers. The court said that the defendant association was merely a purchasing agent for the group of retail grocers who had banded together to eliminate wholesalers' profits and get the advantage of quantity buying.

No doubt we could find a form of words which would make it look as if that case involved different legal points from the one before us. But we have not found a form of words that looks plausible, even to ourselves. We think the Common Pleas decision, made early in the history of this Act in Pennsylvania, treated the statute as "in derogation of the common law" and gave it a construction with which, with due deference, we cannot agree even by the narrowest construction.[11]

Are we bound by it anyhow? We think not. We are fully conscious, of course, that a nisi prius court which ranks with an intermediate appellate court of a state must be followed by a federal court, in the absence of higher state authority.[12] But a Common Pleas Court of Pennsylvania has no such position in its judicial hierarchy.[13] The Supreme Court's last word on the subject of the federal court duty to follow state decisions is King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608. There it was held that the decision of a nisi prius court in South Carolina was not conclusive authority on a federal court on a matter of state law. The opinion noted that in South Carolina trial court decisions are not regularly printed and circulated and

9. Shryock v. Association of United Fraternal Buyers, 1939, 135 Pa.Super. 428, 45 A.2d 581 involved the application of the Fair Trade Act to a consumer's cooperative, but was decided on the basis of lack of evidence of knowledge of the plaintiff's fair trade contracts with others.

10. We set aside, because a wholly different type of question is involved, the cases holding that a cooperative association was not a "dealer" within the meaning of the mercantile license tax statute. See, e.g., Commonwealth of Pennsylvania v. Wyoming Valley Dist. Co. Inc., Pa.C.P. 1944, 37 Luz.Leg.Reg.Rep. 228; Lehigh Wholesale Grocery Co.'s Appeal, Pa.C.P. 1942, 20 Leh.L.J. 210. But cf. Appeal of Beaver County Co-op. Ass'n, 1935, 118 Pa.Super. 305, 180 A. 98.

Likewise not in point is Mennen Co. v. F T C, 2 Cir., 1923, 288 F. 774, 30 A.L.R. 1120, certiorari denied, 1923, 262 U.S. 759, 43 S.Ct. 705, 67 L.Ed. 1219.

11. The Pennsylvania Statutory Construction Act, passed in 1937, says that statutes in derogation of the common law are to be strictly construed only if enacted prior to 1937. 46 Purdon's Pa.Stats.Ann. § 558. The Fair Trade Act was enacted in 1935, but has been amended since 1937, one amendment exempting certain sales. An interesting philosophical query is whether, for purposes of construction of the amended section, it is to be considered as enacted since 1937. The answer is not necessary to our decision since in our opinion defendant's activities come within the Act even construed strictly.

12. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

13. The Common Pleas courts of Pennsylvania have only county-wide jurisdiction in most cases, not state-wide as did the Court in the Fidelity case. See 17 Purdon's Pa.Stats.Ann. § 251; Pa.R.C.P. 1006, 1042, 12 Purdon's Pa.Stats.Ann. Appendix.

so are not generally available. That is not true in Pennsylvania. We cannot claim lack of knowledge, or means of knowledge, of the actions of the Common Pleas courts. So that particular point in the Supreme Court opinion is not available to us.

It frequently happens that although there is no appellate case on a point there is a sufficient body of nisi prius opinion to form a consensus of legal thought on a given subject. In that case we should, of course, join in the consensus. But a single Common Pleas decision can be disregarded by another Common Pleas court of the Commonwealth. We do not think the federal court must be bound by that which does not bind even another Common Pleas court in Philadelphia County.[14] Therefore, with due respect and high regard for Common Pleas No. 5, we differ with the result reached in the Welch case.[15]

We have been greatly helped in the consideration of this matter by the scholarly discussion by Professor Bunn in a paper called "Consumers' Co-operatives and Price Fixing Laws," 40 Mich. L.Rev. 165 (1941). He puts the problem: [16] "The question then recurs: What is the position of a consumers' co-operative under this legislation, or of any co-operative under the state fair trade acts outside Michigan? [17] That will depend on what a patronage dividend is. If it is a price-reduction (whether called rebate, refund, or by whatever name) it seems to be forbidden, for minimum prices are the chief objective of these laws. But per-haps it is something quite different, namely a distribution of the earnings of a business among the persons entitled to receive them. That makes a different story."

The distinction made is between price reduction at the time of sale and a distribution of profits at the end of a given period to the members of a cooperative. The former, Professor Bunn thinks, comes within the fair trade statutes; the latter does not.

■ We do not have before us the question whether a year-end distribution of profits to members can constitute a violation of Fair Trade Acts. We do have the question of whether a discount at the time of sale is a violation.[18] We conclude that it is and that the learned District Judge was correct in so holding.

■ This brings us to the question of what the remedy shall be, if any, in addition to the injunction. Plaintiff wants an accounting which will include the sale of all Sunbeam appliances which defendant has sold below the established fair trade price. Plaintiff calls our attention to the rule that in unfair trade cases and in patent infringement cases such accounting generally follows as a matter of course. This is a perfectly familiar rule as everyone dealing with patent infringement and unfair competition cases knows.[19]

■ We think these authorities are not applicable here. In a patent infringement case the infringer has profited himself by use of another's property right in a patent.

14. In the King case the Court stated, 333 U.S. at page 161, 68 S.Ct. at page 493, 92 L.Ed. 608, "it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court."

15. The Ninth Circuit has recently stated that a federal court is not bound by decisions of state trial courts unless "a goodly number of the trial courts of the state generally and for a considerable period of time have adhered to a common interpretation of the point." State of California v. Fred. S. Renauld & Co., 9 Cir., 1950, 179 F.2d 605, 609.

16. Bunn, supra at 172.

17. The Michigan Fair Trade Act expressly provides that the payment of patronage dividends by farmers' cooperatives shall not be construed as a violation of the Act. Mich.Comp.Laws, 1948, § 445.153. The section of the Wisconsin Act exempting all sales by cooperatives was held unconstitutional in Weco Products Co. v. Reed Drug Co., 1937, 225 Wis. 474, 274 N.W. 426.

18. For a comparable situation under the NRA, see Bunn, Consumers' Co-operatives and Price Fixing Laws, 40 Mich.L. Rev. 165, 170, 173 (1941). Compare the OPA order discussed in Lehigh Valley Cooperative Farmers v. Bowles, Em.App. 1945, 148 F.2d 828.

19. 2 Nims, The Law of Unfair Competition and Trademarks 1324 et seq. (4th ed. 1947); Restatement, Restitution § 136 (1937).

Making him account for what he has made thereby comes as close as we can to making the plaintiff whole for the harm done him. In the typical unfair competition case the defendant has deprived the plaintiff of business rightfully his by passing off his goods as those of the plaintiff or intimidating or deceiving the plaintiff's possible customers. An accounting here, likewise comes as close as we can to putting the plaintiff where he would have been had he not been hurt by the defendant's tort.

The case before us is completely different. While it was once suggested that "predatory" price-cutting could be considered unfair competition [20] the argument made there has no application here. The plaintiff's products have been sold by the defendant it is true, but there is no suggestion that plaintiff has not been paid for his wares as much as he was entitled to be paid. If anyone has lost anything by virtue of price reduction sales by defendant it is other retailers who might have sold the goods to the purchasers at the regular price and made a profit.[21] These other retailers are not parties to this lawsuit and who they are and how good their chances were for making these sales at the regular price are questions which even a crystal-gazer could not answer.

It is to be noted that Section 8 of the statute, which has been quoted earlier, calls the sale or offering for sale at less than the fair trade price "unfair competition." It is an easy step to say that because it is called unfair competition in the statute we apply the well established rule, already discussed. in unfair competition cases. But we are entitled to ask, "Unfair competition with whom and to whose injury?" Certainly because an epithet has been thrown at a sale below a fixed price we do not automatically give the measure of relief which has been worked out in a long series of cases in instances where a plaintiff has actually suffered demonstrated harm.[22]

The plaintiff has a powerful weapon in the injunctive process to stop this cooperative society from selling goods to its customers cheaper than other retailers do. Any claim it may have for pecuniary loss must be supported by a showing that such loss occurred. There is no such showing.

The difficulty of finding any loss to a complaining manufacturer in this type of case has been met in some of the fair trade statutes by a provision for a fine to be assessed against the offending seller.[23] The imposition of this criminal sanction is a matter for legislative consideration. The Pennsylvania statute does not provide for it and we see no occasion to read in a comparable penalty by judicial fiat.

The judgment of the District Court will be affirmed so far as concerns the provision granting the injunction. It will be reversed as to the order for accounting.

20. Rogers, E.S., Predatory Price Cutting as Unfair Trade, 27 Harv.L.Rev. 139 (1913).

21. Even in trademark infringement and traditional unfair competition cases the right to an accounting of profits is hedged about with many restrictions, and is often denied when inappropriate. See Nims, supra Note 19, especially at 1378–1379. At page 1379 the author points out that one of the times when it is denied is when others than plaintiff have a right to receive the profits.

22. The Unfair Sales Act, 73 Purdon's Pa. Stats.Ann. § 213, declares it "an unfair method of competition" to sell below cost with intent to injure a competitor. The Act provides for criminal sanctions and injunctive relief. Could it be argued that an accounting of profits will also be given merely because a violation of the Act is labeled "unfair competition?"

23. G.L.(Ter.Ed.) c. 93, § 14B, as added by St.1937, c. 398, as amended by St.1939, c. 313, 3 Mass.Ann.Laws 1946, c. 93, § 14B; Wyoming Comp.Stats. 1945, § 39–309.