Sunbeam Corporation, Plaintiff-Appellee, v. Central Housekeeping Mart, Inc. et al., Defendants-Appellants.

Gen. Nos. 46,043, 46,044.

Opinion filed December 2, 1953. Rehearing allowed December 30, 1953. New opinion filed May 19, 1954. Released for publication July 2, 1954.

SHERWIN & SHERWIN, of Chicago, for appellants; JULIUS L. SHERWIN, and THEODORE R. SHERWIN, both of Chicago, of counsel.

FINN & VAN MELL (formerly Hay, Morton, Finn & Van Mell), of Chicago, for appellee; HERMAN T. VAN MELL, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court. This is an action based on alleged violation of the Illinois Fair Trade Act (chap. 121½, par. 188–191, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 134.08–134.11]) to restrain the defendants from advertising and selling plaintiff's standard products below fair trade prices, and to recover damages for consequent harm. The chancellor awarded injunctive relief and referred to a master the issues with respect to damages. Defendants have filed separate appeals from two orders and the appeals have been consolidated.

I

ON REHEARING

46043

Plaintiff is a Chicago manufacturer of electrical appliances which are sold nationwide. Since 1937 its products have been distributed by means of fair trade contracts in states where those contracts are permissible. Under this system, plaintiff contracts with distributors who agree that they will sell plaintiff's products only to retailers who in turn have contracted with plaintiff not to resell plaintiff's products at less than the fair trade price from time to time established by plaintiff.

Defendants conduct a retail business in Chicago. Among other commodities, they sell electrical appliances, including products of plaintiff. They have no fair trade contract with plaintiff. They operate what is designated a "discount store" and advertise and sell plaintiff's electrical appliances at less than the fair trade price.

Plaintiff's action is brought by virtue of section 2 of the Illinois Fair Trade Act, which provides that willful and knowing advertising, offering for sale or selling any commodity at less than the fair trade con-

549

tract price "is actionable at the suit of any person damaged thereby" whether the person so advertising, etc. is a party to the contract or not. This section has been challenged as unconstitutional, but was sustained by the Illinois Supreme Court, *Joseph Triner Corp. v. McNeil*, 363 Ill. 559 (1936), and by the United States Supreme Court, *Old Dearborn Co. v. Seagram Corp.*, 299 U. S. 183 (1936).

The United States Supreme Court in the *Old Dearborn* case referred to the history of the fair trade contract rule. It said that the Illinois Fair Trade Act recognized the common-law rule which had been accepted by many state courts, and that the common-law rule was based on the distinction between goods identified by trade-marks and goods not so identified. The rule was adopted by "some of the lower federal courts" but these decisions were upset by the Supreme Court in *Dr. Miles Medical Co. v. Park and Sons Co.*, 220 U. S. 373 (1911). That case decided that the fair trade system of contracts violated the Sherman Anti-Trust Act (15 U. S. C. § 1) insofar as interstate commerce was affected.

The decision in the *Dr. Miles* case was overcome by the enactment of the Miller-Tydings Amendment in 1937 (15 U. S. C. § 1). The effect of this Amendment was to validate vertical fair trade contract systems (*Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384 (1951)). A vertical fair trade system is an arrangement of agreements between a manufacturer and the wholesalers and retailers of its products. A majority of the United States Supreme Court in that case decided that the Miller-Tydings Act removed from the effect of the Sherman Act only voluntary fair trade arrangements, where the contracts or agreements were valid under state statutes or policy. It said that the Miller-Tydings Act was not intended to give distributors "a club" to force fair trade prices on retailers

who had not signed contracts. A dissenting minority thought that Congress in enacting the Miller-Tydings Amendment to the Sherman Act intended to validate the "non-signer" provisions of the forty-two state Acts whose laws contained them. *Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384 at 401.

In July 1952 Congress enacted an Amendment to the Commerce and Trade Act, 15 U. S. C. § 45. This Amendment, known as the McGuire Amendment, provided in subparagraph (a) (3) that nothing in section 45 nor in any Anti-Trust Acts should "render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy" of any State whose Fair Trade Act contains a "non-signer" clause.

We shall consider the questions raised on appeal in the light of these developments.

Defendants contend the court erred in following the irregular procedure of awarding a permanent injunction on a motion for a temporary order, and in passing on the sufficiency of their answer in the absence of a motion.

The hearing was on plaintiff's motion for temporary injunction. It seems to us that, though references were made to a permanent injunction, both parties anticipated a ruling on the pending motion for temporary injunction. The order entered, however, granted a permanent injunction. The record shows no ruling upon the motion for a temporary injunction, and since plaintiff relies upon the order for a permanent injunction, we shall treat the motion for temporary injunction as out of the case.

At the hearing plaintiff insisted that the record would justify a permanent injunction because the answer neither raised issues on the complaint, nor stated the elements of an affirmative defense. This was virtually a motion for a decree upon the pleadings. De-

fendants, on the other hand, insisted that their answer raised issues on the merits, and presented an affirmative defense requiring a reply. The effect of these contrary positions was to present a question of law.

██ The question is therefor on the propriety of entering the order for the permanent injunction.

██ The chancellor found that defendants' answer raised no triable issues of fact requiring trial and did not properly plead any defense requiring reply. Implicit in these findings is the conclusion in the chancellor's opinion that the answer presupposes a pre-McGuire "fair trading system," while plaintiff's suit is based on a post-McGuire contract.

██ Plaintiff relies upon but one contract which was executed after the enactment of the McGuire Act. It stated its cause of action by alleging this contract for the sale or resale of plaintiff's trade-marked products in fair and open competition, the price list established thereunder, knowledge of the contract by defendants, willful price cutting thereafter by defendants and consequent damage to plaintiff's goodwill. It is our view that under the McGuire Act plaintiff's cause of action is maintainable. It follows that defendants' arguments which are based upon holdings of the federal courts before the McGuire Act was adopted are not helpful. We shall therefor disregard as immaterial those parts of defendants' answer which allege unlawful conduct on the part of the plaintiff, in the doing of which it violated the law as it stood before the McGuire Act, but which conduct since is not unlawful.

Defendants argue principally that their affirmative defenses of illegality (restraint of trade) and unclean hands (discriminatory practices), admitted by failure of plaintiff to reply, should have defeated plaintiff's motion.

Defendants' answer adopted a complaint filed by the United States Government against plaintiff on

February 28, 1952, charging it with unfair trade practices in violation of the Sherman Act, 15 U. S. C. § 1. The chancellor was of the opinion that that complaint created no issue. He thought that it was based upon a system of "fair trading" prior to the McGuire Act.

The government complaint in substance alleged an unlawful interstate conspiracy between plaintiff and its wholesalers. The alleged objective was the maintenance of an effective nationwide system of retail price control. The alleged means were (a) in fair trade States the coercion of retailers into making agreements, to resell only at fair trade prices, by boycott if agreements were not made; (b) in non-fair trade States agreements to boycott retailers in fair trade States who had not made agreements with plaintiff to resell only at fair trade prices.

The equitable defense sought to be alleged is that of illegality. The alleged illegality is the conspiracy between plaintiff and its wholesalers to refuse to sell to retailers who refuse to make resale agreements with plaintiff. Defendants claim they were thereby subjected to an illegal boycott.

Defendants admit, however, that plaintiff offered them fair trade retailers' contracts. Plaintiff's refusal to sell its products to defendants if the latter would not make the agreement regarding resale is not an unlawful boycott. The Illinois Fair Trade Act permits plaintiff to make contracts with wholesalers providing the requirement restricting resale. Ch. 121½, par. 188, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 134.08]. The McGuire Act (§ 2) removes the permissive contracts from the operation of the Sherman Act. *Sunbeam Corp. v. Payless Drug Stores,* 113 F. Supp. 31; *Masters, Inc. v. Sunbeam Corp.,* 112 F. Supp. 268. In the cases cited, both courts decided that the requirement in a contract between producer and vendee that resale would be only under agreements to uphold fair

trade prices was removed from the operation of the Sherman Act. The courts differed only as to what amendment to the Sherman Act brought about this result. Plaintiff, in refusing to sell to defendants except under agreement to resell only at fair trade prices, was exercising a legal right and not perpetrating a legal wrong.

For this reason we conclude that the answer failed to allege a substantial defense of illegality with respect to the vertical contract arrangement in fair trade States.

With respect to the alleged illegal boycott agreements in non-fair trade States, the defendants rely upon the government complaint. They refused to sign contracts which would enable them to purchase plaintiff's products in Illinois. Since there was no showing in the answer of any connection between the alleged illegality in non-fair trade States and the transaction between plaintiff and defendants, the aspect of the defense of illegality arising from vertical contract arrangements is insufficient. *Carpenters' Union v. Citizens' Committee to Enforce Landis Award,* 333 Ill. 225; Pomeroy's Equity Jurisprudence (5th Ed.), Vol. 2, § 399.

The Illinois Fair Trade Act specifically limits its validation of fair trade contracts to those for the sale or resale of trade-marked commodities which are "in fair and open competition with commodities of the same general class produced by others. . ." (Ch. 121½, par. 188, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 134.08].) Plaintiff alleges this essential element of its cause of action in substantially the language of the statute. This averment is directly contradicted by defendants, who further seek to nullify the averment by their allegation of a horizontal conspiracy (between producers as distinguished from those between producers and their wholesalers and retailers), since that

554

allegation would tend to show that plaintiff's commodities were not in fair and open competition.

■ Considered in itself, the allegation of a horizontal conspiracy by plaintiff with other manufacturers, in pursuance of which defendants and other retailers were boycotted, alleges in general an unlawful horizontal arrangement in violation of the Sherman Act. *United States v. Frankfort Distilleries, Inc.*, 324 U. S. 293.

■ The foregoing defense is general and broad, but no motion was made to specify or narrow it. No motion was made to strike the answer or any parts of it, and consequently, no reason or opportunity was presented to defendants to meet, by particular amendments, the objection now leveled at their answer. Under these circumstances we think it would be unfair to deprive defendants of that opportunity should the objection be made in the trial court.

■ The prima facie affirmative defense required a reply, or other pleading, and the chancellor erred in ordering a permanent injunction on the pleadings.

■ There is no merit to the defendants' contention that because plaintiff did not file a reply the affirmative defense has been admitted. After the hearing before the chancellor, but before the order was entered, the parties stipulated that plaintiff should have ten days following the chancellor's ruling on the motion for temporary injunction within which to plead further. The chancellor entered an order granting the extension in accordance with the stipulation. It would have been imprudent for plaintiff to file its reply after defendants had filed notice of appeal, for plaintiff could reasonably anticipate the appeal would be successful. This appeal is a continuation of the case (ch. 110, par. 198, Ill. Rev. Stat. (1953) [Jones Ill. Stats. Ann. 104.074]) and we think that justice requires that

555

the stipulated extension run from the filing of the mandate of this court with the clerk of the superior court.

Although the decree must be reversed because it improperly ordered the issuance of the injunction, we think we should discuss briefly the part of the decree making the reference to the master. The reference called for a report on Sunbeam product sales by defendants and gross profits realized. The court reserved jurisdiction to determine whether any damages should be awarded.

An issue was made on the pleadings whether monetary damages were suffered by plaintiff. This was not the question of irreparable damages. The chancellor found that if defendants' conduct continued plaintiff would be irreparably damaged. That finding bore on the issuance of the injunction, but not on the question of monetary damages suffered by plaintiff in the past. The reference was on the issue pertaining to the latter question, and was on the pleadings.

The complaint is in one count and prays for the injunction and "that plaintiff have and recover damages in the sum of $25,000.00 together with. . ." The complaint does not show an intention to treat the prayers for relief as based on separate causes of action (Sup. Ct. Rule 11). Defendants made no effort to have the intention disclosed. In argument at the hearing defendants made no attempt to establish separate causes of action. No question was raised for the chancellor's ruling. No point is made here that the issue of monetary damages should not have been referred to a master. We expressly refrain from passing on the question whether the prayer for monetary relief presents a legal claim and if so, whether its determination was for the chancellor or a jury.

We shall not pass upon the correctness of the finding that plaintiff would suffer irreparable damage. Suffice to say that allegation and proof of violation of

556

section 2 of the Illinois Fair Trade Act would be enough to show an assault on plaintiff's goodwill. *Bristol-Myers Co. v. Picker,* 302 N. Y. 61, 96 N.E.2d 177; *Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc.,* 166 Misc. 342, 2 N.Y.S.2d 320; *Miles Laboratories, Inc. v. Seignious,* 30 F. Supp. 549.

We think we should comment also upon defendants' contention that the chancellor erred in his opinion that the "defense" of arbitrarily and unreasonably high prices was "absolutely immaterial."

The answer charged that plaintiff's margin of profit between manufacturer's cost and the retail price was "more than 200%." This charge was not offset by an exhibit in the United States Government complaint showing the margin between manufacturer's sales price and retailer's sales price. The chancellor thought the Illinois Fair Trade Act did not provide for an inquiry into prices and that competition would either drive the price down or the dealer out of business. The thought expressed in the clause following the conjunctive "and" is the view of the late JUSTICE HOLMES in his dissent in *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U. S. 373, 412.

Here we have a general defensive averment relied upon as a base from which to force an inquiry into a large national manufacturing concern, its cost of doing business, its cost accounting records, and supporting data. We think it unreasonable to make an inquiry of this scope upon such a general charge.

We need not decide whether there is no case in which equity could not inquire in the public interest whether an excessive margin of profit had resulted in an extortionate retail price to the consumer. It is enough to say that this charge does not here make an issue which would justify such an inquiry. The charge is not supported by any allegations of fact from which

557

the chancellor could determine what even the net profit was.

We should discuss too the claim that the chancellor erred in his opinion that the answer with respect to unfair discrimination and abandonment of fair trading was insufficient. Defendants alleged that plaintiff permitted sales at less than its fair trade price by Army and Navy post exchanges and to employees of certain retailers and industrial firms. We presume the chancellor, correctly took judicial notice of the Illinois Statutes (ch. 143, par. 29–31, Ill. Rev. Stat. (1951))—in effect at the time of trial—which ceded jurisdiction to the federal government in accordance with Art. I, sec. 8, Clause 17, U. S. Constitution, over land acquired by the federal government for its purposes. He would take judicial notice that United States Army and Navy post exchanges are under the jurisdiction of the federal government. Under these circumstances we agree with plaintiff that the chancellor should conclude that the Illinois Fair Trade Act did not apply to the military posts, which were, accordingly in a position similar to non-fair trade states. See Opinion of the Attorney General, State of Minnesota, dated October 14, 1953, C. C. H. Trade Regulations Reporter, par. 67,590.

We are of the opinion, however, that the affirmative defense of unfair discrimination with respect to dealings with employees of certain retailers and industrial firms, though quite general in allegation, is enough to require plaintiff to go forward in pleading either by motion for more particular allegation or by reply. Specific instances would be matter of evidence. The admission by defendants, implied from the charge in the U. S. anti-trust complaint, that plaintiff does not make any sales directly to either consumers or retailers, is not in itself sufficient to override the affirmative defense.

558

We think we have disposed of the points argued which are necessary to our opinion. For the reasons given the decree in case No. 46043 is reversed and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed and cause remanded.*

FEINBERG, P. J. and LEWE, J., concur.

## II

46044

The chancellor entered an order for a permanent injunction December 9, 1952. Defendants filed their notice of appeal from that order on December 10th. The following day, December 11th, the chancellor entered another order for a permanent injunction. This second order was upon the identical pleadings and procedure which underlay the first.

■ When the notice of appeal from the first injunctional order was filed, the jurisdiction of the chancellor over the cause ceased, and the jurisdiction of this Court attached. *Nye v. Nye,* 342 Ill. App. 11; *Cowdery v. Northern Trust Co.,* 321 Ill. App. 243. The chancellor was without jurisdiction to enter the second injunctional order. The reservation of jurisdiction in the first order does not validate the second order. That reservation could not empower the court to enter an order involving a matter of substance after the notice of appeal was filed. *Cowdery v. Northern Trust Co.* In *Strauss v. Danielson,* 396 Ill. 315, cited by plaintiff, the order entered did not involve a matter of substance.

The second injunctional order, subject of appeal No. 46044, is hereby reversed.

*Order reversed.*

FEINBERG, P. J. and LEWE, J., concur.