[L. A. No. 23027. In Bank. Dec. 29, 1955.]

GENERAL ELECTRIC COMPANY (a Corporation), Plaintiff and Appellant, v. FEDERAL EMPLOYEES' DISTRIBUTING COMPANY (a Corporation), Defendant and Appellant.

Meserve, Mumper & Hughes, E. Avery Crary, Robert A. Stewart, Jr., and Cromwell Warner, Jr., for Plaintiff and Appellant.

McCutchen, Thomas, Matthew, Griffiths & Greene, Cooley, Crowley, Gaither, Godward, Castro & Huddleson, Landels & Weigel, Stanley A. Weigel, Edward D. Landels and Herman T. Van Mell as Amici Curiae on behalf of Plaintiff and Appellant.

Butterworth & Smith, Edward L. Butterworth and F. Walton Brown for Defendant and Appellant.

SHENK, J.—This is an appeal by the plaintiff General Electric Company from a judgment of nonsuit. There is also an appeal by the defendant Federal Employees' Distributing Company from an order granting the plaintiff's motion for a new trial. The action is by the General Electric Company to enjoin the retail sales of its products by the defendant at prices below those alleged to have been established in compliance with the terms of the Fair Trade Act of 1931 as amended in 1933 and 1941 (Bus. & Prof. Code, §§ 16900-16905).

The plaintiff has entered into contractual arrangements with its buyers wherein it specified the retail prices for which certain of its products should be sold. Section 16902 of the Business and Professions Code states that such contractual provisions are not invalid, if the products bear "the trademark, brand, or name of the producer or owner" and they are "in fair and open competition with commodities of the same general class produced by others." The defendant is not a party to any of the plaintiff's contracts, but it is claimed by the plaintiff that the defendant is nevertheless bound to comply with the provisions of section 16904 of the Business and Professions Code. That section provides: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." Proof of specific damages, other than that the unfair competition relates specifically to the plaintiffs' contracts, is not a prerequisite to injunctive relief under the statute. (See *Remington Arms Co.* v. *Gatling* (Pa. 1955), 128 F.Supp. 226; *Revere Copper &*

*Brass, Inc.* v. *Economy Sales Co.* (Conn. 1954), 127 F.Supp. 739; *Sunbeam Corp.* v. *Central Housekeeping Mart, Inc.* (1954), 2 Ill.App.2d 543 [120 N.E.2d 362]; *Bristol-Myers Co.* v. *Picker* (1951), 302 N.Y. 61 [96 N.E.2d 177]; *Miles Laboratories, Inc.* v. *Seignious* (S.C. 1939), 30 F.Supp. 549.) Accordingly the action was commenced to restrain the defendant from underselling prices required by the plaintiff's contracts.

The defendant contends that the plaintiff's contracts are invalid and cannot be the basis for an action to protect prices claimed to be established therein. Such invalidity, it is claimed, arises out of the provisions in the contracts exempting from the price requirements retail sales of products to certain classes of individuals. Those classes are employees of the plaintiff, employees of the plaintiff's distributors and dealers, governmental agencies and commercial or institutional establishments buying for their own use and not for resale. The Fair Trade Act itself exempts certain other sales from the operation of the act. They are closing out sales, sales of damaged goods and sales pursuant to court orders. (Bus. & Prof. Code, § 16902.) The defendants claim that the exceptions set forth in the act are exclusive; that to allow the contracting parties to make other exceptions would nullify the intent and purpose of the act by creating favored classes of retail purchasers, and that equity will not enforce such discriminatory contracts.

There is nothing in the Fair Trade Act expressly requiring its application to all classes of retail sales other than those excluded by section 19602. That section merely declares certain contracts not to be invalid because of commodity price provisions, and then states that such "provisions in any contract imply conditions that such commodity may be resold without reference to such agreement" in the case of the excluded sales. It would appear from the plain language of the section that the legislative intent was to withhold the application of fair trade contracts from such sales regardless of the intention of the contracting parties. While the act makes such exclusions mandatory, on the other hand it does not limit other exclusions. Nothing in the act prevents the parties from contracting as they choose with respect to other sales. The only conditions necessary to the validity of contracts for such other sales, above and beyond those required of contracts in general, are that the commodities bear "the trademark, brand, or name of the

producer or owner" and that they be "in fair and open competition with commodities of the same general class produced by others." The parties are left to their discretion as to whether they should enter into fair trade contracts at all, whether they should enter into contracts for the sale of certain commodities and not others, and apparently whether they should enter into contracts for certain sales of the same commodity and not others. The forerunner of the present Fair Trade Act was declared by the Legislature to be an "act to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trademark, brand or name." (Stats. 1931, p. 583.) Being an act designed to permit the producer to protect his trademark at his discretion, it would appear that he could exercise that discretion as he sees fit within the provisions of the statute. It has been the general widespread practice for producers to exclude from the operation of their fair trade contracts the type of retail sales excluded in the present case.

Arguments similar to those made by the defendant have been rejected in a number of cases in other jurisdictions which have fair trade acts substantially the same as the California act. In common with the reasons given in those cases for rejecting such arguments is that set forth in *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* (1954), 118 F.Supp. 541, wherein the court stated at page 548 that "we find nothing in the statute which precludes the parties from providing for other reasonable exceptions to the schedules." The fair trade contract in that case excluded sales "made to Government agencies or to consumers buying for industrial or fleet use," or "sales made by Union Carbide and Carbon Corporation or its subsidiary companies or by its distributors or dealers to their employees." Bearing in mind the declared purpose of the act, the similar exceptions made in the contracts in the present case would appear to be reasonable as having no adverse effect on the plaintiff's trademark and brand names.

In *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.* (1942), 128 Conn. 596 [24 A.2d 841], and in *Burroughs Wellcome & Co.* v. *Weissbard* (1941), 129 N.J.Eq. 563 [20 A.2d 445], the highest court of New Jersey and later of Connecticut held that fair trade contracts which excluded sales made to "physicians, dentists, veterinarians, clinics, hospitals and charitable institutions" were reasonable and conformed to the provisions of local statutes substantially

the same as ours. The case of *Schill* v. *Remington Putnam Book Co.* (1941), 179 Md. 83 [17 A.2d 175], involved an exception of books "(a) sold for circulating or public service purposes and not for resale; (b) charitable, religious or educational purposes . . . ; (c) sales to book clubs; (d) government agencies; (e) mail order houses . . . ; and (f) miscellaneous sales" included in a fair trade contract. The court held that "it does not appear that the Fair Trade Act precludes exemptions from the contract contemplated by its provisions, and we can see no logical objection to reasonable exemptions agreed upon by the parties to the contract." In a group of New York cases (*General Electric Co.* v. *Masters, Inc.*, 307 N.Y. 229 [120 N.E.2d 802]; *General Electric Co.* v. *S. Klein-On-The-Square, Inc.*, 121 N.Y.S.2d 37; *General Electric Co.* v. *Monarch-Saphin Co.*, 80 N.Y.S.2d 419, modified and affirmed, 103 N.Y.S.2d 128) an exception identical with that in the present case was held to be reasonable and proper under a New York statute substantially the same as that in California. We are referred to no case in other jurisdictions which declares the invalidity of fair trade contracts on grounds asserted by the defendant.

The defendant contends that the act was not intended to apply to nonprofit organizations such as the defendant, or to its interorganizational sales such as those to its members. Such an exception is not included in those mandatory exceptions heretofore considered. As the act is one designed to permit the producer to protect his trade mark at his discretion, its very purpose would be frustrated if groups of ultimate consumers were allowed to avoid the provisions of the act because they had joined together for nonprofit purposes. (See *Sunbeam Corp.* v. *Civil Service Employees' Coop. Assn.* (1951), 187 F.2d 768, 770-771, and same case on rehearing, 192 F.2d 572, coming to opposite conclusion but on other grounds, cert. den. 342 U.S. 909 [72 S.Ct. 303, 96 L.Ed. 680].)

The defendant contends that equity will not allow the plaintiff to prevail by reliance on a contract which itself is inequitable. But where that contract complies with proper legislation, it does not appear that equitable principles can be invoked to defeat the very result sought to be obtained by the statute. (See *Kofsky* v. *Smart & Final Iris Co.*, 131 Cal.App.2d 530 [281 P.2d 5].)

Other contentions raise objections not so much to the interpretation and application of the Fair Trade Act in the

present case as to the propriety of the act as a legislative measure. It is contended that the act does not have a uniform operation (see Const., art. I, § 11); that it delegates legislative discretion to producers and wholesalers of commodities; that it is a denial of the equal protection of the laws; and that it results in the deprivation of the defendant's property rights without due process of law. The constitutional validity of the act has been reaffirmed by this court in *Scovill Mfg. Co.* v. *Skaggs, ante,* p. 881 [291 P.2d 936], this day filed. All substantial constitutional questions raised in the present case were decided in favor of the validity of the act in that case and in *Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446 [55 P.2d 177], and those issues are no longer open to question under the present law.

It appears from the foregoing that the plaintiff's contracts comply with the provisions and conditions of the Fair Trade Act and are as much entitled to the statutory remedies provided therein for their protection as are other fair trade contracts.

The judgment is reversed and the order granting a new trial is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—For the reasons and upon the grounds set forth in my dissenting opinion in *General Electric Co.* v. *Superior Court, post,* p. 897 [291 P.2d 945] (S. F. 19317), insofar as applicable here, I would affirm the judgment of nonsuit and reverse the order granting plaintiff's motion for a new trial.

Defendant and appellant's petition for a rehearing was denied January 25, 1956. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.