McKesson & Robbins, Inc., Mead Johnson & Company and Garland McCain, et al., Intervenors,

*v.*

Government Employees Department Store, Inc., Dixiemart Drug Department, Inc., and Government Employees Dixiemart, Inc.

365 S. W. 2d 890.

(*Nashville,* December Term, 1962.)

Opinion filed February 7, 1963.

Rehearing Denied April 3, 1963.

GEORGE T. LEWIS, JR., MILBURN K. NOELL, JR., Memphis, WARING, WALKER, COX & LEWIS, Memphis, of counsel, for appelleants, McKESSON & ROBBINS, INC., and MEAD JOHNSON & CO.

IRVING M. STRAUCH, Memphis, STRAUCH & JONES, Memphis, of counsel, for appellants-intervenors.

IRVIN BOGATIN, RICHARD KREMER, Memphis, ROSENFIELD, BOROD, FONES & BOGATIN, Memphis, of counsel, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is a declaratory judgment action seeking to declare Chapter 58 of the Public Acts of 1937, now codified as sec. 69-201 to sec. 69-205, inclusive, T.C.A., known as the Fair Trade Law unconstitutional. The Chancellor held the Act unconstitutional because it was "an unlawful exercise of police power." Appeals have been seasonably perfected by all adverse parties, excellent briefs filed and arguments heard, and, after considerable thought and investigation, we are now in a position to dispose of the matter.

The appellee is a closed-door membership department store, that is, an organization which maintains a buying service for certain members of the public who qualify for membership. McKesson & Robbins, Inc. and Mead Johnson & Company are manufacturers of drugs while Garland McCain and others operate local drug stores in Memphis. The wholesale druggists manufacture certain

products under different trade names which have minimum retail resale prices established and fixed by these defendants. In some of the instances herein this was agreed to and there was a contract for it, while in others there was not. The local drug stores intervened, contending that the Act is constitutional and that by cutting these prices which have been established on these trade mark things the Dixiemart and others are selling these named products below the minimum price and consequently this constitutes unfair competition pursuant to the Act here in question. Thus it is that the issues as to the constitutionality of this Act are raised.

This Court in 1950 in the case of *Frankfort Distillers Corp. v. Liberto,* 190 Tenn. 478, 230 S.W.2d 971, held the Act constitutional, particularly where it was attack on the monopoly provision of our Constitution. In this opinion the full Act is quoted. It was held in this opinion that this Act was not to fix prices but to protect the ownership or goodwill and the brand, trade name and trade marks under which the commodity is sold. The opinion expressly does not limit its holding to liquor which was involved in that particular case but to all such commodities. It was likewise held in this opinion that the Act in question there, and here applies to non-contracting dealers the same as contracting dealers.

Five years after the Liberto opinion this Court had before it again this very Act in *Seagram Distillers Co. v. Corenswet,* 198 Tenn. 644, 281 S.W.2d 657. This Court again held that this Act applies to all trade mark commodities lawfully used in commerce within the State, and where there is a violation or the making of an unlawful distribution of a trade mark commodity the owner of

that trade mark is entitled to have his trade agreement protected under this Fair Trade Act. It was again reiterated in this opinion that this Act applies to non-signers as well as signers of a contract agreement, quoting from the Liberto opinion, supra.

Now this present lawsuit because of the doctrine of *stare decisis* does not question these two opinions of ours and says that the constitutional provision in regard to the police power of the State, to-wit. Article I, Sections 8 and 21 of our Constitution, and the provision with reference to unlawful delegation of legislative authority, Article II, Section 3 of our Constitution, were not raised in either of these opinions and they can now be raised and thus the Chancellor in a 28 page well reasoned opinion, citing numerous authorities, reaches the conclusion that the Act is a violation of the police power, Article I, Section 8 of the Constitution. The appellees have filed cross-errors likewise to the theory that the Chancellor should have held the Act unconstitutional as a violation of Article II, Section 17, of our Constitution because it is argued that the title to the Act does not accurately and adequately describe the subject of the amendatory character of the Act, and further that Article I, Section 8 and 21 of our Constitution, are violated and the Act is unconstitutional because it deprived this particular appellee, the Dixiemart and others who are non-signers of Fair Trade Contracts of their liberties, privileges and property without due process of law.

In *Cosmopolitan Life Ins. Co. v. Northington,* 201 Tenn. 541, 300 S.W.2d 911, this Court had before it the question of the constitutionality of an Act therein involved. The questions there presented were very similar and identical

to a number of those here raised, that is, that that Act violated Article II, Section 17 of our Constitution, and Article I, Section 8 of our Constitution, and Article XI, Section 8 of the Tennessee Constitution. We concluded in that opinion, after much research and thought, that the Act therein was constitutional. For reasons and under authority therein set forth we now think that the present Act is likewise constitutional and does not violate the police powers of the Legislature of this State. When it comes to determining whether or not an Act of the Legislature is unconstitutional as violating the police powers of the Legislature we must determine the reasonableness of regulations under the Act and to do so the reasonableness of these regulations under this police power really rests with the Legislature, and we, that is the courts, will not examine questions *de novo* and overrule the judgment of the Legislature by substituting our judgment unless it clearly appears to us that those regulations are beyond all reasonable relation to the subject to which they are applied as to amount to an arbitrary usurpation of power, or they are unmistakably and palpably in excess of legislative power, or they are arbitrary beyond all justice.

Police power embraces regulations designed to promote public convenience or general welfare and not merely those in interest of public health, safety and morals. *Nashville C. & St. L. Ry. v. Walters,* 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949. This police power of the Legislature embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people. *Phillips et al. v. State,* 202 Tenn. 402, 304 S.W.2d 614. When one reads this Act as herein, it seems to us perfectly obvious that what is enacted is within the confines of

being reasonable, wherein the Legislature cannot be said to have done such an unreasonable thing as to make the Act unconstitutional.

It is very easy to see how we should make the distinction between the old times when at the sale of a general commodity one attempted to fix the prices and around this certain rules were originally built up, but when we come to the sale of a trade marked commodity, the very essence of which is the reputation of the product, the good will of the producer, the protection of which is necessary both to him, to the honest retailer, and equally important to the public, since under our highly developed long distance system of production and distribution it often affords the only available guarantee of quality. Thus it is, that is what this Act protects, and it is a reasonable Act for the Legislature to enact.

Adverting too, to the confiscatory claim of the appellees under Section 21 of Article I of our Constitution, it would seem to us that such a restriction, as is embodied in this Act, is not confiscatory unless it is unreasonable or contrary to the principles of the Constitution reasonably interpreted; one who invokes the aid of the Constitution in this respect must show that he has a title free from condition, at least with respect to the supposed invasion. This certainly is not the situation under the factual situation alleged here. There is not a confiscatory provision in this Act. It is merely an Act to protect trade marked things and articles as is set forth in the Act—it is not to take but to protect.

The right to sell these items only at this minimum price was not a thing that was attacked after Dixiemart had purchased them but was a thing that they knew about

before they purchased them and they were under no obligation to purchase them unless they were going to comply with this minimum resale price. Morally and legally they are presumed when they buy these trade marked goods to have accepted the condition by their voluntary act of purchase.

We think there is no violation of our constitutional provisions above referred to, and that there is really a plausible reason for the enactment of this legislation.

Of course, due process clauses of our Constitution and that of the Federal Constitution are bound up so together with the inherent police power of the State that it is almost impossible to consider the limitations of one without considering the other, and really there is very little meaning to one without considering them together. When we thus consider these different provisions with reference to due process, police power and the unlawful taking by this Act, we are naturally considering them together, and we think in thus considering them we must arrive at the conclusion as stated in the sentence immediately preceding this, and that there is no violation of Article I, Section 8 and Section 21 of our Constitution.

When one reads the Act, as fully copied in the Liberto case, and the reasoning of this Court in the Cosmopolitan case, supra, 201 Tenn. at page 548, 300 S.W.2d at page 914, the reference to Article II, Section 17, of our Constitution, which was there set forth it equally applies under the Act in the instant case, and we adopt such reasoning herein. For these reasons we overrule the cross assignment as to the violation of Article II, Section 17 of our Constitution.

The subject of the Act itself is embraced in the title and all legal consequences necessarily flowing from it will for the purpose of constitutional requirements be regarded as embraced in the title. We can find no constitutional infirmity here.

█ It is very forcibly argued that the Act should not apply to the appellees herein who are more or less a closed membership organization. This question was considered by a California court in *General Electric Co. v. Federal Employees' Distributing Co.;* 45 Cal.2d 891, 291 P.2d 942, wherein that court for a very logical reason held contrary to this argument. In the first place there is no exception in the Act in question in the instant case for organizations of this kind. Clearly where there is no exception made none was intended by the Legislature and none should be engrafted thereon by the courts. This Act, of course, as we have repeatedly said above, was passed for the protection of these trade marks and clearly people should not be allowed to violate the Act by joining themselves together as cooperatives for the purpose of cutting prices. The Legislature had no such intention, and this Act in question here must apply to all alike.

It is argued that the holdings in the Old Dearborn case (*Old Dearborn Dist. Co. v. Seagram Distillers Corp.*, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109), which are referred to, quoted from and adopted by us in the Liberto case have been repudiated because of certain language that the Supreme Court used in *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035. We think though that this Schwegmann case was dealing entirely with statutory construction of the Miller-Tidings Act which exempt fair trade contracts from provisions of

the Sherman Anti-Trust Act and did not in any way disturb the holding in the Old Dearborn case. This statement is borne out by the second Schwegmann case, *Schwegmann Bros. Giant Super Market v. Eli Lilly Co.*, 5 Cir., 205 F.2d 788, certiorari denied by the Supreme Court of the United States, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369, wherein in that opinion it was said:

"In comparing the two opinions, it must be borne in mind that Old Dearborn was dealing with questions of constitutionality, whereas the Schwegmann case was dealing only with statutory interpretation. There is no implication in Schwegmann that Congressional approval of enforcement against non-signers would be unconstitutional, the implications of the opinion are to the contrary."

█ A good deal of faith and argument is placed by the appellees on the fact that some twenty-two states have held related acts unconstitutional. A similar argument is made by the appellants that so many states practically an equal number have held the acts constitutional. As we see it, this is more or less begging the question, because the question here is not what we as a court think of this but whether or not it is within the province of the Legislature to pass such an Act. The Legislature is more or less the body who forms our public policy. This Act has been on the books now for nigh onto thirty years and twelve years ago it was first held constitutional with the statements in the opinion that it applied to anything that came within the Act, that is those trade marked things and things of that kind. Of course, the question of the wisdom of this legislation is not for us to pass on, as we have said time and time again, but it is whether or not it

presents a reasonable necessity for the protection of the people of the State. Where these questions are fairly debatable as they clearly are here the legislative judgment in passing them certainly will not be disturbed by us.

■ This Act did not give to people any legislative authority because there was no right given to private persons to fix prices as we said in the outset here. This is not a price fixing act, but it was for the ownership and goodwill of the brand, trade names and trade marks, and thus clearly the Chancellor is in error in this. In the Liberto case we cited many cases, such as the Old Dearborn case and others, which hold to the contrary of the Chancellor's reasoning here, and we by citing those cases intended, and do now, to approve their holding.

■ Much argument in support of the unconstitutionality of this Act is based on the fact that this Act was passed more or less shortly after the stock market crash of 1929, passed in the early 1937s, and that we should take judicial knowledge that economic conditions, etc., have changed, and thus now hold the Act unconstitutional. In support of this argument *McConnell v. City of Lebanon,* 203 Tenn. 498, 314 S.W.2d 12, and a number of other cases were cited. This argument, more or less though, is an argument in support of the position we have taken herein that the Legislature forms the public policy of this State and by doing so has passed this Act and had it on the books for twenty-five years and the courts have passed on it twice and held it constitutional under certain provisions, then it seems to us if there were going to be any changes it is not up to the courts to do it, but it is up to the Legislature to change what is the public policy of the State with reference to the questions here involved. It

seems to us another well recognized rule comes into play in view of what we have just said, that is, that where we have construed a statute and this construction has been on the books as long as it has, for twelve years, and the Legislature has not changed it, that the courts should be required to follow this interpretation of the Act until the Legislature directed a change therein. The authorities in support of this position might be *Phillips, etc. v. Carson,* 188 Tenn. 132, 217 S.W.2d 1, *Miller v. Kennedy,* 164 Tenn. 470, particularly at page 474, 51 S.W.2d 1000.

As a result of what has been heretofore said and for reasons therein stated, we are satisfied that the Act in question here is constitutional. The decree of the Chancellor holding to the contrary will be reversed and the causes remanded to that court for further proceedings consistent with this opinion.

## On Petition to Rehear

There has been field herein by the Government Employees Department Store, Inc., and others, a very courteous and well reasoned petition to rehear.

After a very thorough consideration of this petition we find that it amounts to nothing more than an additional argument with additional authorities cited for the proposition so well presented in the original brief and oral argument before this Court. In our original opinion we answered this argument and in answer thereto cited the case of *General Electric Co. v. Federal Employees' Distributing Co.,* (a 1956 California case), 45 Cal.2d 891, 291 P.2d 942, as authority for our rejection of the petitioners' argument now made. In the California case just referred to on this question, the California court said:

"* * * As the act is one designed to permit the producer to protect his trade mark at his discretion, its very purpose would be frustrated if groups of ultimate consumers were allowed to avoid the provisions of the act because they had joined together for nonprofit purposes."

This statement in very simple language answers the present petition to rehear.

The cases cited in this petition to rehear are to the effect that the statute may be constitutional as against one company despite the fact that it may not be enforced against all. We do not think that the cases cited are applicable and should be applied in a case of the kind before us. Therefore for reasons stated in the original opinion and herein we must deny the petition to rehear.