BURROUGHS WELLCOME & Co. (U. S. A.) INC. *v.* JOHNSON WHOLESALE PERFUME CO., INC.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued January 9—decided February 17, 1942.

*Herman M. Levy* and *Burton N. Levey,* for the appellant (defendant).

*William F. Weber,* of the New York bar, with whom was *Cornelius D. Shea,* for the appellee (plaintiff).

AVERY, J. This action was brought by the plaintiff under the Fair Trade Act of this state, Cumulative Supplement, 1939, § 921e, seeking an injunction and damages. It bases its cause of action on subsection (f) of the act, which reads as follows: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." The trial court rendered judgment for the plaintiff.

The facts as stated in the finding, with such corrections as we make, are as follows: The plaintiff is engaged in the production, distribution and sale of various drugs, medicinal and toilet products bearing its registered trade-marks, brands and name, "Burroughs Wellcome & Co. (U. S. A.) Inc.," and is the sole owner of the right to use the trade-marks identifying its products and preparations, which are articles of standard quality, sold throughout the state in fair and open competition with products of the same general class produced and sold by others. The defendant carries on a wholesale business in which it manufactures and sells cosmetics and sundry articles to retail stores, and it also operates a chain of retail stores in Connecticut where such articles are sold. One store operated by the defendant has a prescription department. Other stores of the defendant are in competition with stores selling similar goods except as regards compounding prescriptions and the sale of narcotics and the like for which a special license is required. The defendant in

its wholesale department does not possess proper federal and state licenses, particularly narcotic licenses, necessary to handle and distribute many of the plaintiff's products, but in other respects it is in competition with the wholesale dealers handling the plaintiff's goods in the state. The plaintiff sells only to certain designated wholesalers in this state. It does not make sales in this state directly to any retail distributors. It does sell directly to certain national chain drug organizations having retail outlets in this state, but all sales to such organizations are wholly consummated without the state. The defendant could and did purchase from the plaintiff's wholesalers in Connecticut on the same basis and at the same prices as other retailers similarly situated, and has at all times been able to obtain its adequate requirements from recognized wholesale distributors of the plaintiff located in this state within a reasonable time. The plaintiff declines to sell to the defendant either as a wholesaler or retailer and does not sell directly in Connecticut to any stores of the type maintained by the defendant. The plaintiff's refusal to sell its products to the defendant is in accordance with its general selling policy and has not been actuated by bad faith. The price at which the plaintiff sells to all wholesalers, including those which sell at retail in connection with their wholesale business, is the list price less 33⅓, 15 and 5 per cent; the price charged retailers purchasing from wholesalers is the list price less 33⅓ and 5 per cent; hospitals and charitable and governmental institutions are given the same rate as wholesalers; the sales by the plaintiff to chain store operators are at the same rate as those by wholesalers to retailers. The defendant's retail chain stores buy at the same prices and under the same conditions as other retail distributors in this state with whom they are in direct competition. The sale of the plain-

tiff's products is not charged with a public use and benefit. The plaintiff has entered into numerous contracts with many retailers throughout the state providing that the latter will not sell or advertise to sell the plaintiff's trade-marked products at prices less than the minimum prices specified in the contracts. These retail dealers buy the plaintiff's products through its recognized wholesalers and distributors in Connecticut. The defendant received notice from the plaintiff that it was operating, and had executed such contracts, under the Fair Trade Act, but the plaintiff refused to sell directly to the defendant. The defendant, with knowledge of the existence of these contracts, purchased, for the purpose of reselling, various of the plaintiff's products bearing its descriptive trade-marks and brands, and advertised and sold at retail these products below the prices set forth in the contracts entered into by the plaintiff with its retail distributors in this state. Such sales did and will adversely affect the plaintiff's business and caused the plaintiff to lose sales. Upon these facts, the trial court rendered judgment enjoining the defendant from selling any of the plaintiff's trade-marked products bearing its registered trade-marks, brands and names at less than the prices stipulated in the plaintiff's fair trade contracts, from which the defendant has appealed.

The Connecticut statute is not essentially different from that of Illinois, the constitutionality of which was sustained in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corporation*, 299 U. S. 183, 194, 57 Sup. Ct. 139. See *Carroll* v. *Schwartz*, 127 Conn. 126, 130, 14 Atl. (2d) 754. This the defendant concedes. It contends, however, that if a producer who takes advantage of the statute sells to certain customers but refuses to sell to others doing a like business, it is enabled to discriminate between them in a way which violates

constitutional guarantees, and that, therefore, the statute in so far as it permits this to be done is unconstitutional. Related to this contention and subject to the same answer is the claim of the defendant that because the plaintiff refused to sell directly to the defendant, the plaintiff comes into court with unclean hands and is, therefore, not entitled to injunctive relief. A "trader or manufacturer . . . carries on an entirely private business, and can sell to whom he pleases." *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 320, 17 Sup. Ct. 540; *United States* v. *Colgate & Co.,* 250 U. S. 300, 307, 39 Sup. Ct. 465; *Great Atlantic & Pacific Tea Co.* v. *Cream of Wheat Co.,* 227 Fed. 46, 48, 141 C. C. A. 594; *McCune* v. *Norwich City Gas Co.,* 30 Conn. 521, 524. All that the plaintiff refuses to do in this case is to sell directly to the defendant. It asks that the defendant, if it uses the plaintiff's good will to make sales, be forced to maintain the retail prices maintained by other retail dealers for the plaintiff's trade-marked products. It does not attempt to prevent the defendant from obtaining the plaintiff's products, and the finding shows that the defendant does in fact get them and resell them. The plaintiff is simply requiring that, if the defendant desires to obtain its products for purposes of resale, it obtain them through the plaintiff's wholesale distributors. Whenever a producer designates a certain person or persons as sole distributor or distributors of its goods in a certain area, other persons desiring to buy them for resale are not usually as well situated as they would be if they could buy directly from the producer, but this does not constitute any violation of their rights. The fact that the act permits the producer to fix the minimum price at which its goods will be sold by all who purchase them either directly from it or from wholesalers to whom it

sells them does not essentially change the situation. The statute is not unconstitutional on the ground suggested, nor is the plaintiff guilty of inequitable conduct barring it from relief under the act because it refuses to sell directly to the defendant.

There is no merit in the defendant's further claim that the statute is unconstitutional as applied in such a case as this because it enables one seller of the goods to fix the price at which another may sell them. It is the producer who fixes the minimum price, not a person who purchases from him and then sells to another. *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corporation,* supra, 194; *Lilly & Co.* v. *Saunders,* 216 N. C. 163, 167, 4 S. E. (2d) 528.

The defendant claims that the statute is a nullity because it provides that "no contract relating to the sale or resale of a commodity . . . shall be construed to violate any provision of the general statutes by reason of any of the following provisions which may be contained in such contract." The defendant's claim is that all other fair trade acts use the phrase "any law of the state"; and inasmuch as our Fair Trade Act refers only to "any provision of the general statutes," contracts under the Fair Trade Act are not removed from any ban of the common law. This reasoning is fallacious. Even if it be conceded that the common law of this state would prohibit such contracts, it was not necessary for the legislature to state expressly that the Fair Trade Act was in derogation of the common law. The statute would in any event control. In addition, there is in this state a statute, General Statutes, § 6352, making it illegal to fix prices "for ice, coal or any other necessity of life." Quite possibly the legislature had this statute in mind in the language of the Fair Trade Act referred to.

The defendant claims that the plaintiff is debarred

of remedy because it has abandoned its price schedule. The intent of the act is to enable a producer or distributor of an article within its purview to fix the minimum price at which the article shall be sold to consumers and it does not purport to determine the terms upon which the producer or distributor may sell the article to those who ultimately dispose of it to the consumer, but that is left open to free bargaining between the producer or distributor and those who purchase from it or its wholesalers. The plaintiff gave the discounts from its list prices allowed to wholesalers to wholesalers who sold also at retail, but this is not forbidden by the act nor otherwise illegal. Certainly there was nothing wrong in its giving to chain store operators the same discounts which they would have received had they bought from wholesalers handling the plaintiff's goods. It is true that in its price schedule it stated that the minimum prices it established did not apply to sales to physicians, dentists, veterinarians, clinics, hospitals and charitable institutions. This exception was one which extended to sales by all retailers, so that all were treated alike. It may well be that a producer or distributor who permits a certain retailer or certain retailers to sell at prices below the minimum fixed in its schedule, or who permits exceptions to be made so generally or under such indefinite terms that its schedule ceases to maintain prices on a substantially uniform basis, would not be complying with the act. But a reasonable exception such as that provided in the plaintiff's price schedule, which it is open to any retailer to make, does not destroy the validity of the schedule. *Schill* v. *Remington Putnam Book Co.*, 179 Md. 83, 95, 17 Atl. (2d) 175; *Burroughs Wellcome & Co.* v. *Weissbard*, 129 N. J. Eq. 563, 20 Atl. (2d) 445, affirmed, 130 N. J. Eq. 605, 23 Atl. (2d) 396.

As to the claim that the plaintiff, in refusing to sell to the defendant directly, violated the so-called Robinson-Patman Act, 15 U. S. C. A., § 13, it is to be noted that the statute itself in the section relied upon by the defendant states that it shall not "prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade." The act forbids discriminations in price between different purchasers "where the effect . . . may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." The act applies to discrimination which "injures competition or affects the stream of commerce." *Great Atlantic & Pacific Tea Co.* v. *Federal Trade Commission*, 106 Fed. (2d) 667, 677. The only discrimination that is apparent here is that the plaintiff gives to wholesalers who also retail its goods the same discount it gives to those who do only a wholesale business, while the defendant, also a wholesaler and retailer, can buy the goods only from a wholesaler, getting the discounts granted retailers. But there is no finding that this in any way injures competition or affects the flow of commerce. Indeed, the contrary fairly appears, because the trial court has found that the defendant has at all times been able within a reasonable time to obtain from wholesalers an adequate supply of plaintiff's goods.

The defendant makes the claim that the plaintiff is not entitled to injunctive relief because only slight monetary damage has been shown and that the damage was not irreparable but was compensatory at law. "Whether damages are to be viewed by a court of equity as 'irreparable' or not depends more upon the

nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." *Robertson* v. *Lewie,* 77 Conn. 345, 346, 59 Atl. 409; *Danbury & Norwalk R. R. Co.* v. *Town of Norwalk,* 37 Conn. 109, 120; *Sisters of St. Joseph Corporation* v. *Atlas Sand, G. & S. Co.,* 120 Conn. 168, 176, 180 Atl. 303. The basis for injunctive relief in such a case as this is not past violations but threatened future ones. "An injunction may issue to prevent future wrong, although no right has yet been violated." *Swift & Co.* v. *United States,* 276 U. S. 311, 326, 48 Sup. Ct. 311; *Miles Laboratories, Inc.* v. *Seignious,* 30 Fed. Sup. 549, 554; *Powell* v. *Valentine,* 106 Kan. 645, 647, 189 Pac. 163; *Hecker H-O Co., Inc.* v. *Holland Food Corporation,* 36 Fed. (2d) 767, 768.

There is no error.

In this opinion the other judges concurred.