**GENERAL ELECTRIC COMPANY**

v.

**HESS BROTHERS, Inc.**

Civ. A. No. 21237.

United States District Court
E. D. Pennsylvania.
Aug. 19, 1957.

Henry W. Sawyer III, Drinker, Biddle & Reath, Philadelphia, Pa., for General Electric Co.

Orrin E. Boyle, Allentown, Pa., for Hess Brothers, Inc.

VAN DUSEN, District Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

I. Findings of Fact

1. Plaintiff's requested Findings of Fact Nos. 1, 2, 4–15, and defendant's requested Findings of Fact Nos. 2, 6–23,[1] 25, and 26 are adopted as the Findings of this court.

Defendant's requested Findings of Fact Nos. 84–91 are adopted as being substantially correct (see affidavits attached to the stipulation filed March 29, 1957).

The advertising of defendant preceding and during its sale from August 24 to September 4, 1956, of plaintiff's fair-traded products at less than the minimum fair trade prices and the sales by defendant at these prices during these ten days caused a general collapse in plaintiff's ability to maintain fair trade prices in defendant's trading area (see, for example, Exhibits P-2, P-3, P-4, P-5, P-7, P-8 and P-9).

2. Plaintiff's requested Finding of Fact No. 16 is adopted with the following modifications:

(a) Benco Sales Company

Add on page 5, following the activity on the date of July 11, 1956:

"Aug. 8, 1956. Plaintiff received notice from the defendant in a letter dated August 8, 1956 (Exhibit D-23), as to the sale of a General Electric fair-traded product below the fair trade price.

"Aug. 10, 1956. Plaintiff authorized its agents to place an order by mail for goods at less than the fair trade price."

Add on page 5 plaintiff's answer to defendant's Interrogatory No. 5-j (see Clerk's document No. 19) following the activity of September 12, 1956.

(b) Save-All, Inc.

Add on page 5 plaintiff's answer to defendant's Interrogatory No. 5-a (see Clerk's document No. 19) following the activity of June 21, 1956.

(c) Lee-Mart

Add on page 5, following the activity on the date of July 9, 1956:

"July 13, 1956. Plaintiff received notice from the defendant in a letter dated July 9, 1956, as to the sale of a General Electric fair-traded product below the fair trade price. (N. T. 357)."

Add on page 6 plaintiff's answer to defendant's Interrogatory No. 5-b (see Clerk's document No. 19) following the activity of August 28, 1956.

(d) Bargain Center (Freemansburg)

Add the following on page 8, following the title "Bargain Center (Freemansburg):"

"June 27, 1956. Plaintiff received notice from General Electric Supply Co. in Allentown reporting a verbal complaint made to it from defendant (N. T. 299–300).

"June 28, 1956. Plaintiff wired Bargain Center advising them of General Electric's fair trade prices and General Electric's intention to enforce fair trade prices. Also, plaintiff mailed its No. 1 warning letter by certified mail and prepared a shopping double-purchase

---

1. Paragraphs 6 to and including 15 of defendant's requested Findings of Fact are correct, but are believed to be of slight relevancy in view of (1) the principle that a plaintiff who has corrected any defect in his fair trade enforcement policy by the time of suit is not to be penalized for past defects, (2) the fact that Act No. 589 of the 1955 General Assembly was not approved until May 25, 1956, 73 P.S. §§ 7, 8, and (3) the vigorous enforcement policy in defendant's trading area carried out by plaintiff in the late spring and early summer of 1956.

authorization, which was dated July 2, 1956 (N. T. 300)."

Add on page 9, following the activity on the date of July 6, 1956:

"July 6, 1956. Plaintiff received back its No. 1 warning letter marked "Refused" (see Exhibit P-14) and authorized Pinkerton Detective Agency to personally deliver the same letter (N. T. 315–6).

"July 13, 1956. Plaintiff received notice from the defendant in a letter dated July 9, 1956, repeating the complaint of June 29, 1956, noted above, as to the sale of a General Electric fair-traded product below the fair trade price (N. T. 316)."

Add on page 9 plaintiff's answer to defendant's Interrogatory No. 5-c (see Clerk's document No. 19) following the activity of August 10, 1956.

(e) Roth Brothers

Add on page 9, following the activity on the date of August 8, 1956:

"Aug. 8, 1956. Plaintiff mailed its No. 1 warning letter by certified mail with return receipt requested, and prepared a shopping authorization dated August 16, 1956 (N. T. 320)."

Add on page 10 plaintiff's answer to defendant's Interrogatory No. 5-d (see Clerk's document No. 19) following the activity of August 27, 1956.

(f) A. O. Gehman & Sons

Add on page 10, following the activity on the date of August 8, 1956:

"Aug. 8, 1956. Plaintiff mailed its No. 1 warning letter by certified mail, with return receipt requested, and prepared a shopping authorization dated August 16, 1956 (N. T. 324).

"Aug. 10, 1956. A return receipt showing the delivery of notice No. 1 came back to plaintiff bearing the date of receipt of August 10, 1956 (N. T. 325).

"Aug. 16, 1956. Plaintiff instructed the Pinkerton Agency to make a shopping (N. T. 325).

"Aug. 27, 1956. Second notice received from defendant of separate violation (see affidavit of John C. Boettinger, Clerk's document No. 4)."

Add on page 10 plaintiff's answer to defendant's Interrogatory No. 5-e (see Clerk's document No. 19) following the activity of August 27, 1956.

(g) Phillips Music House

Add on page 11, following the activity on the date of August 8, 1956:

"Aug. 8, 1956. Plaintiff mailed its No. 1 warning letter by certified mail and prepared a shopping authorization dated August 15, 1956 (N. T. 328).

"Aug. 10, 1956, and August 15, 1956. Plaintiff authorized shoppings."

Add on page 11 plaintiff's answer to defendant's Interrogatory No. 5-f (see Clerk's document No. 19) following the activity of August 24, 1956.

(h) Greene's Electric

Add on page 12 plaintiff's answer to defendant's Interrogatory No. 5-g (see Clerk's document No. 19) following the activity of August 27, 1956.

3. Plaintiff's requested Finding of Fact No. 17 is adopted with the following modifications:

Add on page 13, after line 16, plaintiff's answer to defendant's Interrogatory No. 5-i (see Clerk's document No. 19); and on page 13, at the end of requested Finding of Fact No. 17, add plaintiff's answer to defendant's Interrogatory No. 5-h (see Clerk's document No. 19).

4. The record contains no proof of when, if at all, defendant notified plaintiff that D. Weiman was selling General Electric fair-traded products below the fair trade prices. Plaintiff took the action as to D. Weiman in the period since September 19, 1956, described in plaintiff's answer to defendant's Interrogatory No. 5-k (see Clerk's document No. 19).

5. Plaintiff's answer No. 4-d to defendant's interrogatories (see Clerk's document No. 19) is adopted as a correct statement of the facts.

6. Plaintiff's requested Findings of Fact Nos. 18–24 [2] are adopted as the findings of this court.

All requests for Findings of Fact which are inconsistent with the foregoing are denied.

## Discussion

As indicated by Finding of Fact No. 1, this case has its background in defendant's well-publicized belief that the policy of minimum fair trade prices is not only economically unsound but also illegal. After defendant issued advertisements in several newspapers, stating that it would sell plaintiff's fair-traded products for amounts below the specified minimum prices, the plaintiff filed a motion for a temporary injunction, which was not granted until after the completion of hearings lasting four days (August 29 to September 1, 1956). After injunction issued on September 4, 1956, defendant asked leave to file additional affidavits and interrogatories, and the record was not complete until the filing of a second stipulation on August 15, 1957. There are now before the court defendant's motion to vacate the preliminary injunction and plaintiff's motion to make it permanent.

■ The federal constitutional objections to the application of the Penn-

sylvania Fair Trade Act (73 P.S. §§ 7 and 8) to this defendant under the facts of this case have been rejected by the decisions of the United States Courts of Appeal for the Third and Sixth Circuits in Norman M. Morris Corp. v. Hess Brothers, Inc., 3 Cir., 1957, 243 F. 2d 274, and Sunbeam Corporation v. Richardson, 6 Cir., 1957, 243 F.2d 501.[3] See, also, Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co., 5 Cir., 1953, 205 F.2d 788, certiorari denied 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369. The objections to the Act based on the Pennsylvania Constitution should be presented to the Pennsylvania Supreme Court in view of the decision of that court holding the Act constitutional [4] and the Pennsylvania rule that, where an appellate court has passed on any constitutional objection to an Act of Assembly, it is presumed to have passed on all constitutional objections to that Act.[5] Cf. Norman M. Morris Corp. v. Hess Brothers, Inc., supra, 243 F.2d at page 279; Sunbeam Corporation v. Richardson, supra, 243 F.2d at pages 503–504.

Also, defendant contends that the exemptions contained in a footnote to plaintiff's "List of Fair Trade Minimum Retail Prices Effective July 9, 1956" (see Exhibit P-6) are violative of the specific restrictions to fair trade price-fixing in the McGuire amendment, 15 U.S.C.A. § 45(a), 66 Stat. 632 (1952), of 5(a) of the Federal Trade Commission Act, and the Miller-Tydings amendment, 15 U.S.

2. Defendant's contention that the lack of investigation experience by plaintiff's shoppers prevent their obtaining "buys" below the fair trade price of plaintiff's fair-traded products is rejected by the hearing judge.

3. The lower court decision in this case (reported at D.C., 144 F.Supp. 583) was the principal constitutional authority relied on by defendant at the argument held in September 1956. This decision was reversed by the decision of the United States Court of Appeals for the Sixth Circuit. See, also, House Report No. 1437 of 2/27/52 to accompany H.R. 5767, 82nd Cong., 2nd Sess. (House Misc. Reports 1). The contentions that the exemptions of sales to certain groups

makes the Pennsylvania Act, as applied by plaintiff, a discriminatory violation of the equal protection clause of the Fourteenth Amendment and makes the enabling McGuire Act (15 U.S.C.A. § 45 (a)) a violation of the Fifth Amendment, are considered below, see this Discussion, 155 F.Supp. 61.

4. Burche Co. v. General Electric Co., 1955, 382 Pa. 370, 115 A.2d 361; Gever v. American Stores Co., 1956, 387 Pa. 206, 127 A.2d 694.

5. See Turco Paint & Varnish Co. v. Kalodner, 1936, 320 Pa. 421, 428, 184 A. 37, approved in footnote 1 of the Burche case, supra, 382 Pa. at page 373, 115 A.2d 361.

C.A. § 1, 50 Stat. 693 (1937), of § 1 of the Sherman Act.

■ Both Acts provide for the legality of minimum price-fixing agreements between plaintiff and its retailers as an exemption from the federal anti-trust legislation, but specifically do not include within the scope of the legalized agreements "any contract or agreement providing for the establishment or maintenance of minimum resale prices * * between persons, firms, or corporations in competition with each other."

The relevant portion of the language containing the exemptions to plaintiff's fair trade price contracts reads as follows:

"The indicated retail prices do not apply to sales made to employees of the General Electric Company or to sales by distributors or dealers of these products to their own employees, or to sales to governmental agencies or to commercial or institutional establishments buying for their own use and not for resale."

These exemptions are a voluntary relinquishment by plaintiff of its right under the fair trade laws to maintain fair trade prices in sales to these groups, and defendant, as well as any other retailer, may likewise make such sales to these groups without regard to minimum fair trade prices. Plaintiff has not attempted to set minimum fair trade prices for others which it is not following.[6] Providing for such exemptions will not prevent plaintiff from maintaining fair trade prices for the general community, unless the exemptions are shown to be an unreasonable and arbitrary classification and discriminatory in view of the maintenance of fair trade prices for the rest of the community.[7]

■ The exemption here under consideration has been upheld by numerous appellate courts [8] and similar or broader

6. United States v. McKesson & Robbins, 1956, 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209, and Esso Standard Oil Co. v. Secatore's, Inc., 1 Cir., 1957, 246 F.2d 17, are not applicable, since even if Plaintiff herein is considered to be in competition with defendant and other retailers for sales to the exempted groups, it has not required such competitors to meet minimum fair trade prices in sales to the exempted groups. Similarly, Bristol-Myers Company v. L. Bamberger & Co., 1937, 122 N.J.Eq. 559, 195 A. 625, involved sales at a discount to a non-exempted group. Cf. Burroughs, Wellcome & Co. v. Weissbard, 1941, 129 N.J. Eq. 563, 20 A.2d 445, affirmed on the lower court opinion 1942, 130 N.J.Eq. 605, 23 A.2d 396.

7. Cf. Morey v. Doud, 77 S.Ct. 1344.

8. See Burche Co. v. General Electric Co., 1955, 382 Pa. 370, 115 A.2d 361, noting in particular Exhibit B at p. 15 of Vol. 4246 Paper Books of the Supreme Court of Pennsylvania (382 Pa. 370–380, 115 A.2d 361); General Electric Co. v. Perloff, C.P. No. 4 of Phila. County, March Term 1954, No. 8847 in Equity, opinion of Judge Guerin of February 9, 1955 (not reported), per curiam opinion of July 11, 1955, sur exceptions to adjudication, noting in particular Exhibit B. attached to the complaint. This exemp-

tion was apparently upheld after argument on the point, but without discussion by the court, in General Electric Co. v. Auction Sales Co., C.A. No. 19, 700 (E.D.Pa., order of April 24, 1956). See, also, General Electric Co. v. S. Klein-on-the-Square, Sup.1953, 121 N. Y.S.2d 37; General Electric Co. v. Monarch-Saphin Co., Inc., Sup.1948, 80 N.Y.S. 2d 419, modified on other grounds and affirmed 1951, 278 App.Div. 650, 103 N.Y. S.2d 128; General Electric Co. v. Federal Employees' Distributing Co., 1955, 45 Cal.2d 891, 291 P.2d 942, rehearing den. 1956; General Electric Co. v. Kimball Jewelers, Inc., 1956, 333 Mass. 665, 132 N.E.2d 652; General Electric Co. v. Masters, Inc., 1954, 307 N.Y. 229, 120 N.E.2d 802.

In General Electric Co. v. Perloff, supra, Judge Guerin stated:

"Defendant next argues that plaintiff does not come before this court with clean hands because of certain exceptions which it makes to its minimum retail price list. Defendant asserts that the only cases in which plaintiff's Fair Trade Contracts do not apply are those specifically listed in Sec. 7 and 9 of the Pennsylvania Fair Trade Act.

"It is admitted that plaintiff has provided certain exceptions other than those appearing in the Fair Trade Act by setting forth at the bottom of the minimum

exemptions likewise have been viewed as being within the spirit of the fair trade laws.[9] In the light of these decisions (particularly Burche Co. v. General Electric Co., supra, footnote 8), defendant has not sustained its burden of showing these exemptions [10] to be so unreasonable or arbitrary [11] as to constitute a discrimination depriving defendant of its constitutional rights guaranteed by the Fourteenth and Fifth Amendments.

■ Plaintiff's discount sales to its own employees for their own use does not place it in the position of being a competitor of defendant for such employee business within the ban of the statutory language quoted above. See cases cited in footnotes 8 and 9 and Frawley Corp v. Grosslight, CCH 1954 Trade Cases, Par. 67,681 (Cal.Superior Ct.1954); Hanson v. Lagerstrom, 8 Cir., 1943, 133 F.2d 120, 122; and Mitchell v. Anderson, 9 Cir., 1955, 235 F.2d 638, rehearing denied 1956,[12] where courts considered operations of this type as accessory to the overall operation of the

---

price list, which are incorporated in their Fair Trade Contracts by reference, the following: 'The indicated retail prices do not apply to sales made to employees of the General Electric Company or to sales by distributors or dealers of these products to their own employees, or to sales to governmental agencies or to commercial or institutional establishments buying for their own use and not for resale.'

"Although there are no recorded cases in Pennsylvania on this point, in other states having similar Fair Trade Acts as ours, such exceptions have been held consonant with the purposes and intent of these laws. Burroughs Wellcome & Co., Inc. v. Weissbard, 129 N.J.Eq. 563, 564, 20 A.2d 445, affirmed without opinion 130 N.J.Eq. 605, 23 A.2d 396; Schill v. Remington Putnam Book Co., 179 Md. 83, 17 A.2d 175, 180, 22 A.2d 128; Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co., 128 Conn. 596, 24 A.2d 841, 845; General Electric Co. v. Monarch-Saphin Co., Inc., Sup., 80 N.Y.S.2d 419, 420.

"We agree with the reasoning in General Electric Co. v. Monarch-Saphin Co., Inc., supra, where the court said at page 420: 'There is nothing discriminatory in this agreement, nor is it lacking in uniformity. Under it defendant and others may sell below the fixed price to those coming within the exception clause. Were plaintiff or its subsidiary making sales to those described in the exception clause without giving defendant and others a similar opportunity to make such sales discrimination might be claimed.' Reasonable exceptions such as those provided in plaintiff's price schedule, which are open to any retailer to make, do not destroy the validity of the schedule. Evidence produced at trial indicated that sales made under this exception were in all respects in conformity therewith."

9. See Burroughs Wellcome & Co. v. Weissbard, supra; Union Carbide & Carbon Corp. v. White River Distributors, Inc., D.C.E.D.Ark.1954, 118 F.Supp. 541; Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co., 1942, 128 Conn. 596, 24 A.2d 841.

10. Since plaintiff does not have any arrangement with any dealer to enable plaintiff's employees to get a discount from the dealer of a fair-traded item (N. T. 824–5), defendant's contention that rebates are discriminatory need not be further considered.

11. Defendant's contention that sales by plaintiff to commercial establishments for their own use below minimum fair trade prices creates a potentially large group of customers that can conceivably upset the entire fair trade price structure has not been proved and the hearing judge is unable to find unreasonableness or discrimination in including this class within the exemption. The McKesson & Robbins case, supra, and the Secatore's case, supra, discussed in footnote 6, are, therefore, capable of being distinguished on the additional ground that the substantial nature of the competition alleged to be a discrimination against defendant has not been adequately shown. Cf. General Electric Co. v. S. Klein-on-the-Square, supra, General Electric Co. v. Federal Employees Distributing Co., supra, and General Electric Co. v. Masters, Inc., supra, where statistics concerning this exemption were available and the exemption was upheld as not being so broad as to make enforcement as to ordinary retail trade unfair and discriminatory.

12. See, also, Consolidated Timber Co. v. Womack, 9 Cir., 1942, 132 F.2d 101; Mid-Continent Petroleum Corp. v. Keen, 8 Cir., 1946, 157 F.2d 310; and Collins v. Kidd Dairy & Ice Co., 5 Cir., 1942, 132 F.2d 79.

**64**

employer and not such as to constitute the employer a retail seller.

Though the testimony given in affidavit form by Harold Kaplan, Esq., shows that the employees of the General Electric Company's Allentown, Pa., plant, from 2/8/55 to 8/28/56, and the employees of the General Electric Supply Company, Allentown, Pa., from January 1955 to September 1956, were making duplicate purchases of plaintiff's fair trade price-fixed appliances, the new plans instituted in these plants locally and by plaintiff on a nationwide scale during the period from August 26, 1956, to March 1, 1957, indicate that such abuses of plaintiff's minimum fair trade price scales through sales to its employees are not now possible. Plaintiff's new plans prevent the sale in any one calendar year (with certain reasonable exceptions) of more than one of each type of General Electric fair-traded appliance, and require the purchasing employee to certify in writing that the purchase is for his own use and not for resale (see affidavits of E. F. Corkery, J. H. Melchior, and Robert C. Walton, all of which are included in Clerk's document No. 16).

 These aforementioned new plans for employee sales and the testimony of Mr. Walton (affidavit in Clerk's document No. 16), that the excess or duplicate sales to plaintiff's employees, pointed up by defendant, are less than two-thirds of one per cent. (.65) of the total unit retail sales in the trading area for the period involved, prevent the hearing judge from refusing injunctive relief to plaintiff on this ground. Defendant contends that plaintiff's past policies prevent the granting of injunctive relief, but "Equity will not stand aside the one whose rights have been transgressed and permit them to be appropriated because of previous bad conduct * * *." Valley S. C. Co. v.

Manufacturers' Water Co., 1930, 302 Pa. 232, 238, 153 A. 327, 329. The doctrine that he who comes into equity must come with clean hands has been limited in many instances, one of which is that " '[a] party purging his conduct as far as possible has obtained relief' (21 C.J. 187), and the right to proceed may be conditioned upon his so doing." Comstock v. Thompson, 1926, 286 Pa. 457, 462, 133 A. 638, 640. See, also, Hartman v. Cohn, 1944, 350 Pa. 41, 38 A.2d 22, and Sylvania Industrial Corporation v. Visking Corporation, 4 Cir., 1943, 132 F.2d 947, 957–958, appeal dismissed 1943, 319 U.S. 777, 63 S.Ct. 1033, 87 L.Ed. 1723.

The court will grant defendant an opportunity [13] to show, if it can, that plaintiff's new program of sales to employees is not being effective to restrict such sales to items for the use of such individual employees.

 It has been consistently recognized by courts asked to enforce fair trade laws, such as the Pennsylvania Act (73 P.S. § 7 ff.), that the manufacturer is not entitled to an injunction unless he has reasonably and diligently enforced the fair trade prices specified by him. As stated in General Electric Co. v. R. H. Macy & Co., 1951, 199 Misc. 87, 92, 103 N.Y.S.2d 440, 446–447, which is perhaps the leading case on this subject:

"In establishing this requirement the courts have held that it is not necessary that there be simultaneous enforcement against all violators nor that the price structure be perfect. * * * There, the court laid down the principle that in order to avail himself of the benefits of the statute, the producer or plaintiff must make a sincere and diligent effort to prevent price cutting of branded products, through legal process if necessary." [14]

13. See discussion below concerning opportunity granted defendant 60 days after July 22, 1957 to prevent evidence on the application of Act No. 589 (see this Discussion, 155 F.Supp. 65, 66.)

14. At page 449, of 103 N.Y.S.2d the court added:

"Enforcement activities may take such form as is called for by the nature of the product, the industry, and the violations

Although counsel and the hearing judge have not been able to find any Pennsylvania appellate court decision discussing this principle, the hearing judge finds that it is consistent with Pennsylvania law as it existed on May 1, 1956, and would be applied by the Pennsylvania appellate courts in an appropriate case. The record in this case shows clearly that the plaintiff has maintained reasonable and diligent enforcement of its fair trade prices in defendant's trading area immediately prior to and since this suit.[15] The enforcement activities carried on in this case are far more vigorous than those upheld in most of the cases holding that reasonable and diligent enforcement was present.[16] The general enforcement policy of plaintiff,[17] which was supplemented in this case by an intensive enforcement drive in the two months preceding plaintiff's widely advertised price cutting, has been upheld by numerous courts. See General Electric Co. v. Kimball Jewelers, Inc., supra; General Electric Co., v. S. Klein-on-the-Square, Inc., Sup.1953, 121 N.Y.S.2d 37.[18] In the Kimball case, the court said, at page 657 of 132 N.E.2d:

"The method employed by the plaintiff in investigating and enforcing the prices at which retail dealers were bound to sell their trade marked appliances was not

unreasonable or dilatory, or such as to lead anyone to believe that the plaintiff had waived or abandoned its right to enforce the minimum retail resale prices which had been fixed by its fair trade contracts. (Citing cases)."

In the S. Klein-on-the-Square, Inc., case, 121 N.Y.S.2d at page 55, the court said:

"In retrospect it of course is now possible to look back and say that in this detail or that a slightly different approach or line of action might have been more effective than the particular approach or line of action which was followed; but that there was an approach and a line of action honestly designed to minimize violations and stop violators is established beyond question; * *.

\* \* \* \* \* \*

"The defense of lack of diligent effort to enforce compliance with plaintiff's stipulated prices is not sustained."

 On the basis of the foregoing authorities the hearing judge concludes that plaintiff has satisfied the general equitable requirement of reasonable and diligent enforcement as a prerequisite to securing an injunction.

---

by the retailers, providing they add up to a reasonable and diligent effort in the light of all the facts."

15. See Plaintiff's Requests for Findings of Fact Nos. 18 to 20, adopted by paragraph 6 of the Findings of Fact.

16. See, for example, Seagram-Distillers Corp. v. New Cut Rate Liquors, Inc., 7 Cir., 1955, 221 F.2d 815, certiorari denied 1955, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740; Sunbeam Corp. v. Marcus, D.C.S.D.N.Y.1952, 105 F.Supp. 39; Eastman Kodak Co. v. Home Utilities Co., D.C.Md.1956, 138 F.Supp. 670; Donner v. Calvert Distillers Corp., 1950, 196 Md. 475, 77 A.2d 305. The cases make clear that reasonable and diligent enforcement does not require plaintiff to proceed against all violators immediately and simultaneously in the courts before attempting to secure compliance warnings.

17. See plaintiff's Requests for Findings 18 and 20, adopted by paragraph 6 of the Findings of Fact.

18. General Electric Co. v. Federated Dept. Stores, Inc., § 68,098, 1955 CCH Cases (E.D.Wisc.1955), relied on by defendant, involved a specific factual situation before that court and there is no evidence of a similar situation being before this court. Further, see the affidavit of Winston H. Pickett, filed Aug. 12, 1957, which reveals that after the denial of temporary injunctive relief and before the disposition of plaintiff's motion for a permanent injunction, a consent judgment was entered into by which the Federated Dept. Stores were enjoined and restrained indefinitely from violating plaintiff's minimum fair-trade price schedules.

Act 589 of the 1955 General Assembly (Act of May 25, 1956, P.L. (1955) 1756, 73 P.S. § 8, which is referred to in this Discussion as Act 589) was signed by the Governor on May 25, 1956, but did not become effective until September 1, 1956, due to the absence of any language stating an effective date and in view of the following language of the Pennsylvania Statutory Construction Act, as amended (46 P.S. § 504):[19]

"All laws hereafter enacted finally at a regular session of the Legislature, * * * shall be in full force and effect from and after the first day of September next following their final enactment, unless a different date is specified in the law itself * * *."

■ Also, assuming the Act took effect in May 1956, the hearing judge finds that the phrase, "after at least seven days written notice given by the defendant prior to the commencement of such action," contemplates that a retailer such as this defendant cannot rely on the "complete defense" provided for in the Act unless he has given the manufacturer notice of sales below the specified minimum prices by his competitor or competitors at least seven days before suit has been instituted. (The hearing judge reaches this conclusion on the basis of the letter dated 8/1/57 of counsel for plaintiff.) As stated above plaintiff has taken reasonable and diligent steps to enforce his price schedule and such steps need not be taken within seven days of the notices received from defendant.

Since defendant disagrees with these conclusions and an appellate court may disagree with the hearing judge's conclusions on these points, the possible application of the Act to this factual situation is considered by the hearing judge in the balance of this Discussion assuming the Act took effect on the date of its approval by the Governor (May 25, 1956).

There is some doubt as to whether defendant has established the "complete defense" provided for by Act 589 of the 1955 General Assembly, which added this sentence to the Pennsylvania Fair Trade Act (73 P.S. § 8):[20]

"It shall, however, be a complete defense to such an action for the defendant to prove that the party stipulating such price, after at least seven days written notice given by the defendant prior to the commencement of such action, has failed to take reasonable and diligent steps to prevent the continuation of such advertising, offering for sale or selling, by those in competition with the defendant, who were specified in such notice."

These principles seem pertinent in interpreting this Act:

A. Since the Governor had vetoed for other reasons a bill (H.B. 1418) passed by this session of the General Assembly, which used the phrase "effective steps to insure compliance," rather than the words "reasonable and diligent steps" contained in Act 589, the General Assembly must have intended to require plaintiff to take steps which

19. This bill (H.B. 2107) was finally passed on May 22, 1956, by the regular 1955 session of the General Assembly, which was convened on January 4, 1955, and recessed from time to time but did not adjourn sine die until May 22, 1956. This was the longest legislative session in the history of the Commonwealth of Pennsylvania. Since H.B. 2107 was passed during the 1955 regular session, the following sentence of 46 P.S. § 504 is inapplicable:

"All laws enacted finally at a special or extraordinary session of the Legislature, shall be in full force and effect immediately upon final enactment, unless a different date is specified in the law itself."

20. Although the hearing judge agrees with plaintiff's contention that Act 589 did not become effective until September 1, 1956 (see 46 P.S. § 504), plaintiff has taken the required action, in the case of those violators of whom defendant gave it notice, within 7 days of such notice in any event (cf. Conclusion of Law 4 and footnote to that Conclusion), so that whether the Act became effective in May or September 1956 is immaterial.

were somewhat less than those "effective to insure compliance."

B. By creating the "complete defense," the General Assembly recognized that a violator, whose conduct a competitor thinks is important enough to call to the attention of the manufacturer, is having a significant effect on the fair trade price structure. Under such circumstances, the manufacturer fails to take effective steps to see that such violator conforms to the minimum price schedule at the risk that what he has done may not be considered reasonable and diligent.

C. The judicial definition of the phrase "reasonable and diligent" by other courts in fair trade cases is some evidence of what the General Assembly contemplated would be required under this language.

D. The Legislature would not have passed this Act in order to require the manufacturer to take some action in seven days and then cease his reasonable and diligent steps. The statutory language contemplates that the manufacturer should investigate and follow up vigorously violators of whom they receive notice from their retailers.[21]

Applying these principles to this record, the hearing judge believes that plaintiff should place more evidence on the record of its enforcement activities against certain violators of whom defendant gave it notice prior to institution of this action, before being entitled to a permanent injunction, as more fully explained in the letter to counsel of July 22, 1957.

Defendant's motion to vacate the temporary injunction will be denied and the matter will be set down for addition of evidence to the record in September 1957, in accordance with the letter of July 22, 1957, and this Discussion.

Conclusions of Law

1. Plaintiff's requested Conclusions of Law Nos. 1–5 [22] are adopted as the ▇▇ Conclusions of Law of this court.

2. Act No. 589 did not take effect until September 1, 1956, and, hence, is inapplicable to this case.

3. The phrase in Act 589 "after at least seven days written notice given by the defendant prior to the commencement of such action" does not require plaintiff to take "reasonable and diligent steps to prevent" competitors from selling below plaintiff's minimum prices within seven days of receipt of notice from defendant that such competitors are making such sales.

4. In the event that Conclusions of Law Nos. 2 & 3 should be incorrect, the court makes these Conclusions of Law:

▇▇ A. Where, immediately prior to notice from a department store that a retailer has made a sale below a manufacturer's minimum fair trade price, such manufacturer has conducted three shopping attempts to determine if the retailer (Bargain Center, Allentown—see

---

21. In this connection, the opinion in General Electric Co. v. R. H. Macy & Co., supra, concluded with this sentence at page 452 of 103 N.Y.S.2d:

"General Electric, as any other manufacturer or producer, should:

"(1) Keep itself informed as to price cutting activities and other trends generally known in the industry or trade.

"(2) Close scrutiny should be kept over prior violators and appropriate action taken where indicated.

"(3) Investigate and follow up complaints vigorously.

"(4) Enforce Fair Trade prices by repeated legal action if necessary.

"(5) The enforcement program must be a continuing and sustained one."

22. See Remington Arms Company v. Gatling, D.C.W.D.Pa.1955, 128 F.Supp. 226, 227, where the court stated:

"The primary purpose of state fair trade laws, including that of Pennsylvania, is the protection and preservation of the goodwill of the manufacturer's trademark or brand name by means of resale price maintenance. The sale of a trade-marked commodity at less than the stipulated price constitutes an assault on this goodwill which the Pennsylvania Fair Trade Act is intended to protect."

See, also, Lee-Wilson, Inc., v. General Electric Company, 1 Cir., 1955, 222 F.2d 850, 853.

Finding of Fact No. 3) [23] is selling at less than these prices, disclosing three refusals to sell for less than such prices, and the notice is received during a well-advertised price-cutting sale by the department store, the intent of Act No. 589's requirement of taking steps, within seven days, is not violated by failure to act within the seven-day period when the department store's price cutting continued during this period.[24]

■ B. Under Act No. 589, plaintiff has no duty to notify a defendant of what steps it is taking from time to time against violators of whom defendant has given it notice, but plaintiff should inform defendant that it has received the notice and has acted within the seven-day period.

C. The plaintiff is not entitled to a permanent injunction on the record now before the court.

5. Plaintiff is entitled to a permanent injunction restraining defendant from violating its minimum fair trade price schedule.[25]

6. Neither the Pennsylvania Fair Trade Act nor the Federal enabling acts (15 U.S.C.A. §§ 1 and 45(a)), as applied to this factual situation, are in violation of the United States or Pennsylvania Constitution, Const.U.S. Amend. 14; Const. art. 1, § 1, P.S.

7. The exemption clause contained in plaintiff's fair trade minimum retail price schedule does not render plaintiff's minimum fair trade prices illegal or unenforceable.

All requests for Conclusions of Law which are inconsistent with the foregoing are denied.

23. See, also, Finding of Fact 2(f), where plaintiff *did not take steps within seven days* after a second notice of a separate violation, before which plaintiff had personally delivered its No. 1 warning letter as a result of a recent previous notice of violation and had conducted two shopping attempts to determine if the retailer (A. O. Gehman & Sons) was selling at less than plaintiff's minimum fair trade prices. These two shoppings disclosed two refusals to sell for less than such prices (one of these shoppings was conducted on the same day as the receipt of the second notice). Plaintiff's action did not violate the intent of Act No. 589, especially where such second notice was received during the well-advertised price-cutting sale by the defendant.

24. Where a retailer sends a second notice to a manufacturer, repeating a complaint

that a competitor has violated the *minimum fair trade price and no new instance* of such violation is mentioned in the repeat notice, it is clear that if the manufacturer has taken appropriate steps within seven days of receipt of the first notice and is following the matter up, he need not take action within seven days of such a repeat notice. For this reason, the failure of plaintiff to take any specific action within seven days of the July 13th repeat notice concerning Bargain Center, Freemansburg (see Finding of Fact 2 (d)), does not constitute a "complete defense" under Act 589.

25. As explained above, under Discussion, this permanent injunction will not be issued until the parties have had an opportunity to supplement the record on or after September 20, 1957.

