PARKE, DAVIS & COMPANY, Plaintiff,

v.

ROCKET DRUGS, INC., Defendant.

United States District Court
S. D. New York.

March 12, 1963.

Rogers, Hoge & Hills, New York City, for plaintiff.

W. Edward Woods, New York City, for defendant

EDELSTEIN, District Judge.

This is a motion seeking a preliminary injunction to enjoin defendant's sale of plaintiff's products at lower than "fair trade" prices. Plaintiff is a manufacturer of pharmaceuticals, ethical drugs, medicines, preparations and other drug commodities. Its products bear one or more of plaintiff's trademarks. Defendant operates a drug store engaged in the business of selling drugs and sundries in New York City. It is alleged that defendant operates an aggressive price cutting establishment known as a "discount drug store" operation. Plaintiff has entered into contracts with its retailers, in conformity with N.Y.Gen. Business Law, McKinney's Consol.Laws, c. 20, § 369–a [1] calling for minimum re-

1. "§ 369–a. *Price fixing of certain commodities permitted.*

"1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of New York by reason of any of the following provisions which may be contained in such contracts:

"(a) That the buyer will not resell such commodity except at the price stipulated by the vendor."

tail fair trade prices on its trademarked products. The instant action is bottomed on the N.Y. General Business Law § 369–b [2] which makes sales at prices below those stipulated in fair trade contracts actionable as unfair competition. Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332(a) (1) (1952).

Defendant has not denied plaintiff's allegations that it has engaged in price cutting but it, nevertheless, opposes the motion on two grounds: (1) that plaintiff engages in retail sales to industrial accounts, hospitals and clinics and is therefore barred under the doctrine of Esso Standard Oil Co. v. Secatores, Inc., 246 F.2d 17, (1st Cir. 1957), cert. denied 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957), from enforcing its resale price maintenance program, and (2) that the delay of seven months between the institution of the action and this motion is an unreasonable delay barring injunctive relief.

■ In the Secatores case the First Circuit found that plaintiff and defendant were in fact competitors in the sale of gasoline to the same group of ultimate consumers, operators of fleets of trucks or taxicabs. The defendant serviced this group at its filling stations while Esso serviced these ultimate consumers by making bulk deliveries of gasoline to underground tanks and pumps located on customer's premises. Finding that the parties were in fact competitors, the court held that plaintiff was precluded from enforcing its fair trade agreements. Thus, if plaintiff and defendant here are competitors, plaintiff may not enforce its resale price maintenance program. 15 U.S.C. § 45(a) (5).[3]

Plaintiff admits that it sells directly to industrial clinics and hospital pharmacies but denies that such sales bring it into retail competition with defendant. Plaintiff states that the industrial clinics and hospital pharmacies are not the ultimate consumers of the drug products. Each industrial clinic with which plaintiff deals employs a full time pharmacist, a registered nurse or a physician who is engaged in servicing the health needs of company employees. And in the hospital or clinic drugs prescribed by physicians are dispensed at the hospital pharmacy or dispensary for ultimate consumption by the patient for a fee. The plaintiff maintains that these dispensary procedures render it abundantly clear that the hospital clinics and industrial accounts are not ultimate consumers and that plaintiff is not a retailer.

■ Although the principle of the Secatores case still retains its vitality as authority for the proposition that a manufacturer or producer cannot enforce its fair trade contract if it sells to a retailer and at the same time competes with him, the principle has not been found to be applicable to a drug manufacturer's sales to industrial accounts and hospital clinics when the clinics and industrial accounts are not the ultimate consumers. In Upjohn v. Liberty Drug Co., 193 F.Supp. 701, 703 (S.D.N.Y. 1959) the defendant retailer made contentions identical to those urged herein concerning the manufacturer's sales to industrial accounts and clinics. Judge

2. "§ 369–b. *Unfair competition defined and made actionable.*
  "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

3. "(5) Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

Levet of this court, in granting a preliminary injunction replied as follows:

"As another basis for the denial of the relief here sought, the defendant contends that plaintiff is precluded from enforcing its fair trade price structure by reason of its sale at wholesale to the dispensaries of various industrial and public utility corporations. It appears that each of the dispensaries in question employs a full-time pharmacist, a registered nurse or a full or part-time physician and that each is engaged in servicing the health needs of company employees. There is not the slightest indication that these dispensaries are a mere subterfuge for the sale of plaintiff's products to ultimate consumers at less than the fair trade price or, indeed, that any such sales in fact occur."

And in Johnson & Johnson v. Avenue Merchandise Corp., 193 F.Supp. 283, 289 (S.D.N.Y.1961) the identical argument herein maintained by defendant was rejected by the court on the basis of the Supreme Court's construction of the word "retail" in Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946). Judge Bryan of this court, in the Avenue Merchandise case noted that the Supreme Court recognized a "crucial difference between home or personal consumption, and consumption for business or industrial purposes," and thereupon held that sales to industrial concerns could not be considered retail sales as that term is understood by businessmen, economists or the general public. Johnson & Johnson v. Avenue Merchandise Corp., supra at 289. And most recently the Secatores case was again considered but found to be not controlling in Mead Johnson & Co. v. West Chester Discount, Health and Vitamin Center, 212 F.Supp. 310 (E.D.Pa.1962) which held that the plaintiff drug manufacturer's sales to hospitals and institutions were not sales at retail so as to place plaintiff in competition with the defendant retailer. Notwithstanding defendant's bare allegation to the contrary, plaintiff is not in retail competition with defendant in selling to industrial accounts and clinics.

Moreover, plaintiff makes no attempt to apply its fair trade minimum prices to sales by retailers to hospitals and industrial clinics since industrial accounts are specifically excluded from plaintiff's fair trade prices. In this respect the facts of the instant case are clearly distinguishable from Esso v. Secatores, Inc., supra, since in Secatores Esso was attempting to impose its fair trade prices upon sales to commercial accounts by Secatores. A similar distinction was recognized in General Electric Co. v. Hess Brothers, Inc., 155 F.Supp. 57 (E.D.Pa. 1957) wherein the court refused to apply the Secatores doctrine on the ground that a specific exemption in General Electric's fair trade contracts for sales by retailers to General Electric employees and to governmental agencies rendered the Secatores principle inapposite.

As for the question of the effect of a seven month lapse of time between the institution of suit and the notice of this motion, the court does not find that such a delay indicates a lack of diligence on plaintiff's part which should necessarily bar the grant of relief. Plaintiff's activities in enforcing its fair trade program have been vigorously and diligently pursued. The delay is sufficiently explained by the amount of work required to prosecute faithfully the plethora of fair trade actions brought by Parke Davis & Co. in this court. Defendant's claim of laches is totally without merit since the delay is sufficiently explained and there is an absence of any evidence of any harm ensuing to the defendant. The plaintiff has neither waived nor abandoned its right to relief. See Parke Davis & Co. v. Jarvis Drug Co., Inc., 208 F.Supp. 350 (S.D.N.Y.1962); Upjohn Co. v. Barbarand Merchandise Corp., 207 F.Supp. 585 (S.D.N.Y.1960); Johnson & Johnson v. Bellmore Sales Corp., 207 F.Supp. 586 (S.D.N.Y.1960).

There appears to be no reason why plaintiff's injunction should not be granted. Defendant's acts are in violation of

§ 369-b N.Y. General Business Law. Unless enjoined, their continuance pending trial will result in irreparable injury to plaintiff and may lead to the destruction of its fair trade structure and the impairment of its good will. The grant of injunctive relief will not prevent defendant from selling plaintiff's products. It will merely require that it sell them at the fair trade prices.

The foregoing shall constitute the findings of fact and conclusions of law of the court. The motion for the preliminary injunction is granted. Settle order on notice within two weeks.